THE STATE, EX REL. CELEBREZZE, APPELLANT, *v.* BOARD OF COUNTY COMMISSIONERS OF ALLEN COUNTY ET AL., APPELLEES.
THE STATE, EX REL. CELEBREZZE ET AL., APPELLANTS, *v.* BOARD OF COUNTY COMMISSIONERS OF TUSCARAWAS COUNTY ET AL., APPELLEES.
THE STATE, EX REL. CELEBREZZE, APPELLANT, *v.* BOARD OF COUNTY COMMISSIONERS OF AUGLAIZE COUNTY ET AL., APPELLEES.

[Cite as State, ex rel. Celebrezze, *v.* Allen Cty. Bd. of Commrs. (1987), 32 Ohio St. 3d 24.]

(Nos. 86-477, 86-676 and 86-911—Decided August 12, 1987.)

*Anthony J. Celebrezze, Jr.,* attorney general, and *Diane W. Weaver,* for appellants.

*David E. Bowers,* prosecuting attorney, *John M. Leahy* and *Brien W. Shanahan,* for appellees in case No. 86-477.

*Michael A. Cochran,* for appellees in case No. 86-676.

*Frederick D. Pepple,* prosecuting attorney, and *John F. Kuffner,* for appellees in case No. 86-911.

*Per Curiam.* The issue presented for our determination is whether writs of mandamus should issue compelling the Allen County Commissioners, the Tuscarawas County Commissioners, and the Auglaize County Commissioners (hereinafter "the appellees") to make additional appropriations for their respective public assistance funds. Whether the writs should issue in these cases depends on the meaning to be given to the word "balance," as it is used in R.C. 5101.161. For the reasons that follow, we hold that the complaints for the writ of mandamus were properly dismissed by the courts below.[2]

In relevant part, R.C. 5101.161 reads as follows:

"Prior to December sixteenth, annually, the department of human services shall certify to the board of county commissioners of each county the amount estimated by the department to be needed in the following calendar year to meet the county share, as defined in section 5101.16 of the Revised Code, of expenditures for aid, health care, and administration under Chapters 5107. and 5113. of the Revised Code. At the beginning of the fiscal year *the board of county commissioners shall appropriate the amount certified by the department, reduced or increased by the amount of the balance or deficit in the public assistance fund at the end of the fiscal year.*" (Emphasis added.)

The appellants argue that the word "balance," as it is used in the statute, should be construed to mean "adjusted balance." By "adjusted balance," the appellants mean the balance in the public assistance funds as adjusted by the department to compensate for any state and federal under- or overadvances to the county funds during the previous fiscal year. Under this interpretation, the appellees were not entitled to offset the entire amounts remaining in their public assistance funds against the amounts the department certified they should appropriate for 1985.

---

[2] In case No. 86-676, the appellants additionally raise the issue of whether the Court of Common Pleas of Tuscarawas County had the subject-matter jurisdiction to issue an injunction against a state agency (the department), requiring the payment of funds from the state treasury. The injunction in question is no longer in force, having expired upon the resolution of the case by the trial court, and the issue of its propriety is therefore moot. See *Miner* v. *Witt* (1910), 82 Ohio St. 237, 92 N.E. 21. Accordingly, we decline to address the issue in this particular case.

The appellees, however, contend that the word "balance" should be given its plain meaning. Under this interpretation, the appellees were entitled to reduce the amount of appropriations certified to them by the department by the amounts remaining in their public assistance funds from 1984.

The word "balance" is not defined by the Revised Code. In *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 62, 4 OBR 150, 152, 446 N.E. 2d 449, 551, this court stated that "any item left undefined by statute is to be accorded its common, everyday meaning." In *Eastman* v. *State* (1936), 131 Ohio St. 1, 5 O.O. 248, 1 N.E. 2d 140, paragraph five of the syllabus, we held as follows: "Words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them." The Revised Code itself provides that the terms used in its statutes "shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.

As it is commonly used, the word "balance" means "the difference between the sum of debit entries minus the sum of credit entries in an account," or, more simply, "what remains or is left over." Black's Law Dictionary (5 Ed. 1979) 130. See, also, *Holmes* v. *Holmes* (1964), 65 Wash. 2d 230, 235, 396 P. 2d 633, 635; *Redman* v. *Evans* (1947), 184 Tenn. 404, 411, 199 S.W. 2d 115, 118; and *Commercial Discount Co.* v. *Holland* (1930), 107 Cal. App. 83, 87, 289 P. 906, 908. When the word "balance" is used in this context, it is clear that the statute allowed the appellees to offset their share of appropriations for 1985 with the remaining balances of their public assistance funds from the previous fiscal year.

The appellants argue that we should apply the *in pari materia* rule of construction in interpreting the statute's use of the word "balance." The appellants contend that when R.C. 5101.16 and 5101.161 are construed together, it becomes apparent that the legislature meant to say "adjusted balance" instead of just "balance" when it enacted R.C. 5101.161. However, it is a cardinal rule of construction that where a statute is clear and unambiguous, there is "no occasion to resort to the other means of interpretation." *Singluff* v. *Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph two of the syllabus. An "unambiguous statute is to be applied, not interpreted." *Sears* v. *Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E. 2d 413, paragraph five of the syllabus. It is only where there is some doubt as to the meaning or ambiguity in the language of a statute that the rules of construction may be employed. *Singluff, supra,* paragraph one of the syllabus. This is true even if extraneous circumstances show that the legislature intended to enact a statute different from that which it did enact. *D. T. Woodbury & Co.* v. *Berry* (1869), 18 Ohio St. 456, paragraph one of the syllabus.

Furthermore, if we were to adopt the appellants' argument, we would in effect be adding the word "adjusted" to the statute. This we cannot do. As we stated in *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125, 127, 49 O.O. 2d 445, 446, 254 N.E. 2d 8, 9: "In determining legislative intent it is the duty of this court to give effect to the words used, not to delete words used or insert words not used." See, also, *Wachendorf* v. *Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E. 2d 370, paragraph five of the syllabus.

Since we find the language of R.C. 5101.161 and its use of the word "balance" to be clear and unambiguous, our inquiry stops here. While

the *in pari materia* rule of construction is an acknowledged aid in the interpretation of statutes, its use is limited to those situations where some doubt or ambiguity exists in the wording of a statute. *Hough* v. *Dayton Mfg. Co.* (1902), 66 Ohio St. 427, 434, 64 N.E. 521, 523. Although we are sympathetic to the appellants' claim that the legislature intended to write "adjusted balance," we are bound to adhere strictly to the language of the statute.. Any incongruity between the legislature's intent and the language of R.C. 5101.161 should be resolved by the legislature, rather than the courts.[3]

We now turn to the question of whether we should grant the writs requested by the appellants. Generally, a writ of mandamus may issue only if there is a clear legal duty to perform the acts sought by the relator. *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, 40 O.O. 2d 141, 228 N.E. 2d 631, paragraph one of the syllabus. In the cases at bar, the appellants have not demonstrated that the appellees have a clear legal duty under R.C. 5101.161 to make additional appropriations for their respective public assistance funds. Consequently, we hold that the courts below properly dismissed the complaints for writs of mandamus in case Nos. 86-477, 86-676 and 86-911, and affirm the judgments of each of the courts of appeals below.

*Judgments affirmed.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS and H. BROWN, JJ., concur.

HOLMES and WRIGHT, JJ., dissent.

---

[3] R.C. 5101.161 was recently amended by the legislature so that it now reads "adjusted balance" in the place of "balance." This, of course, has no effect on our decision herein, since we are bound to interpret the statute as it was written when the facts of

HOLMES, J., dissenting. I dissent from today's decision because the word "balance," as used in the context of R.C. 5101.161 and 5101.16, is ambiguous. When construed, it represents only the amounts remaining in county coffers that were appropriated by the county, and does not include amounts advanced from state and federal funds. The majority has consciously and unnecessarily frustrated the intent of the General Assembly, treating such intent as irrelevant, by invoking the "plain meaning" rule. This it did in disregard of the rule of construction it purported to follow: R.C. 1.42.

R.C. 1.42 provides, in pertinent part: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." Although the majority correctly accords the undefined word "balance" its common, everyday meaning, it fails to read the word in the context of the statute.

This court should not construe statutory terms in a vacuum. It is this court's duty to begin the task of statutory construction where the legislature began: with a determination of the purpose of the legislation. See *Ohio Dental Hygienists Assn.* v. *Ohio State Dental Bd.* (1986), 21 Ohio St. 3d 21, 21 OBR 282, 487 N.E. 2d 301 (word "rule" in R.C. 4715.39 construed as unambiguous, giving effect to legislative intent); *Black-Clawson Co.* v. *Evatt* (1941), 139 Ohio St. 100, 22 O.O. 63, 38 N.E. 2d 403. Only after the general scheme or purpose of the statute is discerned can the disputed terms be read in context. This pre-

these cases took place. All references to R.C. 5101.161 as they appear herein are to the statute as amended effective January 1, 1974. The effective date of the recently amended statute is November 27, 1985.

liminary analysis must occur before a specific ambiguity can be found.

"Interpretation is but comparison and judgment and both of these processes take place before the court can determine the existence of ambiguity. Nothing is ambiguous in the abstract; or else, everything in the abstract is ambiguous." Horack, In the Name of Legislative Intention (1932), 38 W. Va. L. Q. 119, 121.

In *Black-Clawson Co., supra,* we said, at 104, 22 O.O. at 65, 38 N.E. 2d at 405:

"* * * [W]e realize that we should not pick out one sentence and disassociate it from the context. We should look rather to the four corners of the enactment and thus determine the intent of the enacting body."

See, also, *MacDonald* v. *Bernard* (1982), 1 Ohio St. 3d 85, 1 OBR 122, 438 N.E. 2d 410. Other examples of this process can be found in recent decisions of this court. See, *e.g., Radcliffe* v. *Artromick Internatl, Inc.* (1987), 31 Ohio St. 3d 40, 31 OBR 148, 508 N.E. 2d 953 (word "work" ambiguous when used in two contexts within R.C. Chapter 4141); *Ohio Dental Hygienists Assn., supra; State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 4 OBR 150, 446 N.E. 2d 449 (word "neighborhood" neither ambiguous nor vague, given the criminal context in which it appears).

Turning then to R.C. 5101.161, the word "balance" is that "difference between the sum of debit entries minus the sum of credit entries" in the public assistance fund which reduces the amount of money certified by the department that the county commissioners must appropriate for the ensuing fiscal year. The public assistance fund is made up of not only moneys from the county, but also includes state and federal money, as is clear from the second paragraph of R.C. 5101.161:

"Funds provided under this section shall be placed in a special fund in the county treasury known as the public assistance fund. All moneys received from the state government for the purposes of Chapters 5107. and 5113. of the Revised Code shall be deposited in the county treasury to the credit of the public assistance fund."

The state and federal funds are not *gifts* to the counties, but represent advances to them to facilitate the *local* administration of aid payments and health care. R.C. 5101.16. The advances are made quarterly and are adjusted to reconcile previously estimated amounts to actual expenditures at the end of every second quarter.[4] Thus, when read in the context of the legislative scheme, the *ambiguity* of the word "balance" is apparent: it may connote the balance of only the county funds, or it may connote the entire balance, including unreconciled state and federal funds.

Pursuant to accepted rules of statutory construction, I believe this ambiguity should be resolved to permit the adjustments urged by the Attorney General. It is not reasonable to read "balance" as granting a gift of funds to the county, contrary to the express intent of the General Assembly. R.C.

---

[4] R.C. 5101.161 concludes with the following:

"* * * The department shall prepare a voucher at least quarterly authorizing payment from the state public assistance subsidy for the estimated difference between the local share of state expenditures and the sum of the state and federal shares of local expenditures. The amount to be paid to each county shall be increased or decreased each quarter by the amount by which the actual difference between local share and the sum of the state and federal shares in the second previous quarter varies from the estimate on which the advance of funds was based."

1.47(C); R.C. 1.49(A) and (E); *Brown v. Martinelli* (1981), 66 Ohio St. 2d 45, 48, 20 O.O. 3d 38, 40, 419 N.E. 2d 1081, 1085; *Humphrys v. Winous Co.* (1956), 165 Ohio St. 45, 56, 59 O.O. 65, 71, 133 N.E. 2d 780, 787. Further, the Ohio Department of Human Services has since 1966 interpreted the R.C. 5101.161 "balance" provision as meaning the balance or deficit remaining after adjustments are made for over-advances or underadvances of state and federal funds. By stipulation, the counties here admitted to holding the same interpretation until at least 1983. Such administrative constructions of a statute must be considered. R.C. 1.49(F).

Because the statutory scheme presented here is rather complex, it is even more critical that each word used by the legislature be read in context.

"There is no surer way to misread any document than to read it literally." *Giuseppi v. Walling* (C.A. 2, 1944), 144 F. 2d 608, 624 (L. Hand, J., concurring). The interpretation of legislative enactments deserves more insight and breadth of review than a mere dictionary definition. In the context of R.C. 5101.161, the word "balance" is an ambiguous term which, when construed in the totality of the chapter of law here, mandates a clear legal duty on the part of the county commissioners to perform the acts requested by the Attorney General.

I would reverse the dismissal of the complaints for writs of mandamus in these cases, and therefore respectfully dissent.

WRIGHT, J., concurs in the foregoing dissenting opinion.