**NATIONAL EQUITY TITLE AGENCY, INC., Appellee and Cross–Appellant,**

v.

**RIVERA et al., Appellants and Cross–Appellees; and Sichak et al., Contemnors–Appellants and Cross–Appellees; Beamer et al., Cross–appellees.**

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–010032, C–010064, C–010192 and C–010268.

Decided Dec. 28, 2001.

Frost Brown Todd, LLC, David A. Skidmore, Jr., and Katherine Cook Morgan, for appellee and cross-appellant National Equity Title Agency, Inc.

Taft, Stettinius & Hollister, LLP, Daniel J. Hoffheimer and Raymond W. Lembke, for appellants Antonio R. Rivera and National Real Estate Title Agency, Inc.

Greg Cohen, for contemnors-appellants and cross-appellees Antonio R. Rivera, National Real Estate Title Agency, Inc., Damian Sichak, and Maria Sagrati.

Dinsmore & Shohl and Matthew V. Brammer, for cross-appellees Al Beamer and James A. Erwin.

Reminger & Reminger and Laura Sullivan, for cross-appellee Fitch & Spegal.

---

PAINTER, Judge.

{¶ 1} Underlying these multi-party appeals is the trial court's imposition of a temporary restraining order, a preliminary injunction, and a final six-month injunction against defendants-appellants and cross-appellees, Antonio R. Rivera and National Real Estate Title Agency, Inc. ("National"). The court prohibited Rivera and National from violating Rivera's covenant not to compete with his former employer, plaintiff-appellee and cross-appellant National Equity Title Agency, Inc. ("Netco"). Since neither the trial court nor this court stayed the injunction, it expired in February 2001. Thus the propriety of the court's judgment in enforcing Rivera's covenant not to compete is moot and not properly before us.[1]

{¶ 2} Contempt is the subject of this appeal. And a party may be held in contempt for violating an invalid injunction provided that the injunction is not "transparently invalid or ha[s] only a frivolous pretense to validity."[2] Ordinarily, a party faced with an invalid injunction must have it modified or vacated. It may not simply be ignored.[3] In this case, the injunction was not transparently invalid.

{¶ 3} Rivera worked for Netco and developed business opportunities for the company beginning in 1994. He was promoted to vice president and in 1998 signed an employment agreement stating that, for six months after his employment with Netco ended, he would not "sell to, contact, solicit, or deal with any

---

1. See *State ex rel. Celebrezze v. Allen Cty. Bd. of Cty. Commrs.* (1987), 32 Ohio St.3d 24, 512 N.E.2d 332, fn. 2, citing *Miner v. Witt* (1910), 82 Ohio St. 237, 92 N.E. 21; *Beta LaserMike, Inc. v. Swinchatt* (Mar. 10, 2000), Montgomery App. No. 18059, 2000 WL 262628; *Angerman v. State Med. Bd. of Ohio* (Feb. 27, 1990), Franklin App. Nos. 89AP–896 and 89AP–897, 1990 WL 17295.

2. See *Walker v. Birmingham* (1967), 388 U.S. 307, 315, 87 S.Ct. 1824, 1829, 18 L.Ed.2d 1210.

3. See *Evans v. Williams* (C.A.D.C.2000), 206 F.3d 1292, 1299, citing *Walker*, supra.

Netco customers." The court enforced this agreement under Illinois·law, but it is undisputed that some of National's officers continued to do business with some of Netco's customers despite the court's order.

{¶ 4} Netco frequently moved the court to hold those from National associated with the transgressions in contempt. The court ultimately held Rivera, National, and National Vice Presidents Maria Sagrati and Damian Sichak in civil contempt. The court fined these parties and also awarded Netco the attorney fees it had expended in pursuit of the contempt proceedings. But the court dismissed Netco's motion to hold the parties in criminal contempt, concluded that National's majority shareholders, Al Beamer and James E. Erwin, were not in civil contempt and that Beamer was also not in criminal contempt, and issued a directed verdict for National's attorneys, Fitch & Spegal, on the issue of contempt. Few of the parties to this appeal appear satisfied with the court's judgment.

{¶ 5} Before we begin our analysis of the various parties' contentions, we note that Beamer and Erwin complain that Netco has not appended to its brief a copy of the order from which the appeal is taken, as required by Loc. R. 6(B)(1)(b). Beamer and Erwin thus urge us to strike Netco's brief as it relates to them and to dismiss this aspect of Netco's cross-appeal. Despite this technical deficiency, we consider the merits of the cross-appeal related to Beamer and Erwin. We have already delayed the hearing of the merits of this voluminous case once for a technical deficiency,[4] and we are now as determined to end it here as the parties are to pursue it.

### I. Civil Contempt—National, Rivera, Sichak and Sagrati

{¶ 6} National, Rivera, Sichak, and Sagrati ("the appellants") raise multiple assignments of error related to the trial court's finding of civil contempt. The appellants first argue that the court's contempt holding was in error because the underlying temporary restraining order, as well as the temporary and final injunctions, violated Civ.R. 65(D). They also challenge the court's holding on the basis that (1) the offending behavior had ceased, (2) they were unable to comply because information critical to compliance was lacking, and (3) Netco should not have prevailed since it had "unclean hands."

{¶ 7} The appellants also disagree with the penalties imposed. They argue that the fines imposed were in fact criminal in nature, but that the trial court imposed the sanctions according to the lesser civil standard of proof, and that they were not afforded the constitutional protections required in a criminal

---

4. See *Natl. Equity Title Agency v. Rivera* (Feb. 21, 2001), Hamilton App. No. C–000606.

proceeding. The appellants conclude by alleging that Netco did not properly justify the attorney-fees award issued by the trial court.

{¶ 8} The appellants first assert that the court's order and injunctions were improper because they violated Civ.R. 65(D), which states in part that a restraining order or injunction "shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." In this respect, the court admittedly referred to Rivera's employment agreement to define the Netco customers with whom the appellants were prohibited from dealing.

{¶ 9} But "specificity, not perfection, is required by Civ.R. 65(D). Only sufficient detail as to advise the defendants of the conduct which they are prohibited from engaging in is required."[5] And the essence of the rule is that "the decree sought to be enforced must not be too vague to be understood."[6] It is clear from the record that while the appellants may not have known who every Netco client was, they certainly dealt with some businesses that they knew to be Netco customers. Accordingly, the trial court's prohibition, while not perfect, was specific enough to be understood in the circumstances for which the appellants were cited. Thus the appellants' first assignment of error is over-ruled.

{¶ 10} Next, the appellants raise three issues in a single assignment of error, alleging that the trial court erred by holding them in civil contempt. They believe that Netco had "unclean hands" and thus was unworthy of benefiting from the court's contempt holding.[7] But the primary behavior of which they complain was Netco's delay in providing the appellants with a comprehensive national list of customers to be avoided. Since the appellants were already dealing with businesses that they knew were Netco customers in violation of the court's order, Netco's reluctance to provide the appellants with a complete list was probably prudent and is certainly understandable. For our purposes, Netco's hands remained clean.

{¶ 11} Second, the appellants claim, in what they concede is essentially their first assignment of error restated, that they did not have sufficient information to comply with the court's order. They claim that they did not know who Netco's

---

5. See *Mead Corp. v. Lane* (1988), 54 Ohio App.3d 59, 67, 560 N.E.2d 1319, 1327.

6. See *State ex rel. Fraternal Order of Police v. Dayton* (1977), 49 Ohio St.2d 219, 223, 3 O.O.3d 360, 361 N.E.2d 428, 432.

7. See *Bean v. Bean* (1983), 14 Ohio App.3d 358, 363–364, 14 OBR 462, 471 N.E.2d 785, 792.

customers were. The record, as we have indicated in addressing the first assignment of error, demonstrates otherwise.

{¶ 12} Finally, the appellants argue that the court's civil contempt sanctions were inappropriate because, by the time the court heard and decided the matter, the underlying behavior had ceased. The appellants are correct, and we thus sustain their second assignment of error.

{¶ 13} "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order."[8] Thus when compliance with the court's order has become moot, as when the case has been settled, civil contempt sanctions are no longer appropriate.[9] The record demonstrates that when the trial court held the contempt hearing one year after Netco had initially moved the court to find the appellants in contempt, (1) National had effectively ceased operations, (2) Rivera was employed in a different industry, and (3) Sichak and Sagrati were no longer employed by National. Under these circumstances, where the appellants were no longer capable of further violation of the court's injunction, civil contempt sanctions served no further purpose and were inappropriate.

{¶ 14} The trial court certainly had the jurisdiction to "consider the collateral issue of criminal contempt even after the underlying action [was] no longer pending."[10] Criminal contempt sanctions, in contrast to civil contempt sanctions, "are punitive in nature and are designed to vindicate the authority of the court."[11] But the court dismissed Netco's motion to hold the appellants in criminal contempt. Thus the punitive fines levied against the appellants of $5,000 each were inappropriate sanctions, and we reverse their imposition.

{¶ 15} As part of the civil contempt proceeding, the court also awarded Netco attorney fees. This award, unlike the punitive fines, was appropriate. We have previously held that "notwithstanding the absence of express statutory authority, the court, in its discretion, may award a complainant the reasonable costs of enforcing an injunction."[12] The trial court did not abuse its

---

**8.** See *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 555, 740 N.E.2d 265, 269.

**9.** Id., citing *Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 451–452, 31 S.Ct. 492, 502, 55 L.Ed. 797.

**10.** Id. at 556, 740 N.E.2d at 270.

**11.** Id. at 555, 740 N.E.2d at 269, citing *Denovchek v. Trumbull Cty. Bd. of Commrs.* (1988), 36 Ohio St.3d 14, 15, 520 N.E.2d 1362, 1363.

**12.** See *ConTex, Inc. v. Consol. Technologies, Inc.* (1988), 40 Ohio App.3d 94, 531 N.E.2d 1353, fn. 1, citing *Valco Cincinnati, Inc. v. N & D Machining Service, Inc.* (Dec. 31, 1985), Hamilton

discretion in determining that Netco was entitled to be compensated for seeking to enforce the court's injunction against repeated violations by the appellants.

{¶ 16}    In their third assignment of error, the appellants argue that the trial court imposed essentially criminal sanctions without affording the appellants the requisite procedural due process.    Because we have reversed the court's imposition of the fines, the appellants' third assignment of error is moot.

{¶ 17}    The appellants' fourth and final assignment of error alleges that the trial court abused its discretion by awarding attorney fees that Netco had not sufficiently justified.    Netco produced two expert witnesses and billing records to substantiate its request for $445,568.32 in attorney fees.    The court found that amount to be excessive, initiated its own investigation of the billing records, and ultimately awarded Netco $81,525.41.    There is nothing in the record to indicate that the court abused its discretion in so determining the amount.    Appellant's fourth assignment of error is overruled.

{¶ 18}    To summarize the disposition of the errors alleged by National, Rivera, Sichak, and Sagrati, the appellants' second assignment of error is sustained, and we reverse the punitive fines levied against them.    Thus, the appellants' third assignment of error is moot.    The appellants' first and fourth assignments of error are overruled, and we sustain the trial court's award of attorney fees.

{¶ 19}    While National, Rivera, Sichak, and Sagrati complained that the trial court's sanctions went too far, Netco now raises several assignments of error claiming that the trial court did not go far enough.

## II.    Civil Contempt—Beamer and Erwin

{¶ 20}    Netco first alleges that the trial court abused its discretion in failing to hold Beamer and Erwin in civil contempt.    Erwin and Beamer were the majority shareholders of National.    Though they were not defendants in Netco's original action, they had actual notice of the court's temporary restraining order and injunctions, and were thus prohibited from acting in complicity with the named defendants to violate them.[13]

{¶ 21}    But the record is not clear and convincing that Erwin and Beamer abetted the defendants in violating the orders of the court.    In fact, the record demonstrates that Erwin and Beamer were divorced from the day-to-day operations of National.    They did not directly participate in business closings or

---

App. No. C–840835, 1985 WL 4921.  See, also, *State ex rel. Fraternal Order of Police v. Dayton* 49 Ohio St.2d 219, 3 O.O.3d 360, 361 N.E.2d 428, syllabus.

**13.**  See Civ.R. 65(D).  See, also, *Midland Steel Products Co. v. U.A.W. Local 486* (1991), 61 Ohio St.3d 121, 573 N.E.2d 98, paragraph one of the syllabus.

employee management, and only Erwin was even an officer of National. Aside from insinuating that Erwin and Beamer were, as shareholders, in positions to benefit monetarily from violations of the court's order, Netco points to only two specific actions to clearly and convincingly demonstrate civil contempt.

{¶ 22} Netco complains that Beamer operated National's website, and that, since the website solicited business, Beamer participated in the violation of the court's order. But the court's order did not prohibit National from soliciting business, especially where National did not enjoy an unfair advantage as a result of Rivera's breach of his covenant not to compete. Operating a website, without more specific information as to how Netco was aggrieved, was not contumacious.

{¶ 23} Next, Netco complains that Erwin seamlessly transferred the assets of National to a new company, Counselor's Title, and that the new company competed with Netco. Certainly a third party with actual notice should be prohibited from attempting to circumvent an injunction through a sham transaction.[14] But, again, the court's injunction did not prohibit the sale of National's assets. And Netco does not indicate where the record reflects that the new company unfairly competed with Netco. Without more, this single allegation did not rise to clear and convincing proof of civil contempt.

{¶ 24} Netco's first assignment of error is overruled.

*III. Criminal Contempt—National, Rivera, Sagrati, Sichak, and Beamer*

{¶ 25} Netco next assigns error to the trial court's dismissal of its motion to hold National, Rivera, Sagrati, Sichak, and Beamer in criminal contempt. It believes that the court erred in dismissing the motion without holding a hearing, and that the defendants' own admissions, standing alone, were proof beyond a reasonable doubt of their guilt.

{¶ 26} R.C. 2705.05(A) states that "[i]n all contempt proceedings, the court shall conduct a hearing." But Netco misunderstands the imperative of this statute. It is to ensure that those accused of contempt, and those alleged to have been prejudiced by another's contempt, have an opportunity to be heard. In fact, Netco has no right to challenge the trial court's dismissal.

{¶ 27} As we have stated previously, criminal contempt sanctions, in contrast to civil contempt sanctions, "are punitive in nature and are designed to vindicate the authority of the court."[15] Thus they are uniquely a matter between

**14.** See *New York v. Operation Rescue Natl.* (C.A.2, 1996), 80 F.3d 64, 70, certiorari denied, *Broderick v. United States* (1996), 519 U.S. 825, 117 S.Ct. 85, 136 L.Ed.2d 42.

**15.** See *State ex rel. Corn v. Russo,* 90 Ohio St.3d at 555, 740 N.E.2d at 269, citing *Denovchek v. Trumbull Cty. Bd. of Commrs.,* 36 Ohio St.3d at 15, 520 N.E.2d at 1363.

the court and the person alleged to have disobeyed the court's order. Since Netco "does not seek a benefit other than that of establishing a principle and seeing [the defendants] punished,"[16] Netco has no right to have this issue reviewed on appeal.[17] Put another way, if the trial court did not believe that its authority required vindication, Netco could not force the court to assert its own authority.

{¶ 28}   Thus we overrule Netco's second assignment of error.

### IV.   Civil Contempt—Fitch & Spegal

{¶ 29}   Netco's third and final assignment of error alleges that the court erred in failing to hold National's attorneys, Fitch & Spegal, in civil contempt. Because the trial court chose to label its action as a "directed verdict," Netco urges us to review the issue according to a de novo standard, in a light most favorable to Netco.[18]   But despite the court's nomenclature, we have reviewed this final assignment of error according to the standard we have used consistently throughout this decision.   The abuse-of-discretion standard properly applies to a court's judgment concerning contempt.[19]

{¶ 30}   The substance of Netco's argument is that Fitch & Spegal prepared deeds that National used in its dealings with various customers, including those with whom National was restrained from doing business.   We overrule Netco's assignment of error for two reasons.

{¶ 31}   First, as we have previously explained in this decision, when compliance with the court's order has become moot, civil contempt sanctions are no longer appropriate.[20]   The record demonstrates that by the time the court heard Netco's motion, Fitch & Spegal had ceased preparation of any deeds for National, to avoid even the appearance of impropriety.   Under these circumstances, civil contempt sanctions would have been inappropriate.

{¶ 32}   Second, the trial court found, and the record substantiates, that Fitch & Spegal did not violate the trial court's order.   They simply prepared documents for National to use in its business, and, without more, should not have

---

16.   See *Denovchek v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d at 16, 520 N.E.2d at 1364.

17.   Id. at 17, 520 N.E.2d at 1365.

18.   See *Sheidler v. Norfolk & W. RR.* (1999), 132 Ohio App.3d 462, 468, 725 N.E.2d 351, 356.

19.   See *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 11, 19 O.O.3d 191, 417 N.E.2d 1249, 1250.

20.   Id., citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. at 451–452, 31 S.Ct. at 502, 55 L.Ed. 797.

been held responsible for the use to which its client put the instruments. Moreover, while we have found Netco's reluctance to provide National with a comprehensive customer list to be understandable under the circumstances, Netco may not then impute the knowledge of its customer base to Fitch & Spegal or assert that Fitch & Spegal remained willfully ignorant. The court did not abuse its discretion by failing to hold Fitch & Spegal in civil contempt.

{¶ 33}   Netco's third and final assignment of error is overruled.

{¶ 34}   Therefore, the judgment of the trial court is affirmed in part and vacated in part.

> Judgment affirmed in part
> and vacated in part.

HILDEBRANDT, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.