[Cite as *Sheridan v. Hagglund*, 2014-Ohio-4031.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| JOY J. SHERIDAN, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 13CA6 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| NICHOLAS HAGGLUND, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released:  09/10/14** |

APPEARANCES:

K. Robert Toy, Toy Law Office, Athens, Ohio, for Appellant.

Joy J. Sheridan, Appellee[1]

McFarland, J.

{¶1}  Appellant Nicholas Hagglund appeals the trial court's judgment entry denying his motion to be designated the residential parent of the minor child we shall refer to as "I. H." for purposes of this opinion, and further denying Appellant's motion for contempt filed May 1, 2012.  Appellant assigns the following errors for our review:

> "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND
> APPELLEE IN CONTEMPT WHEN SHE ADMITTED TO
> DENYING PHONE VISITATION WITH THE MINOR CHILD
> HEREIN FOR THREE MONTHS.

---

[1] Appellee has made no formal appearance in this matter on appeal.

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO REALLOCATE PARENTAL RIGHTS"

{¶2} Upon review of the record, we find: (1) the trial court did not err when it failed to find Appellee in contempt; and, (2) the trial court did not abuse its discretion when it denied Appellant's motion to be named the residential parent of the minor child. Accordingly, both assignments of error are without merit and are hereby overruled. The judgment of the trial court is affirmed.

## FACTS

{¶3} Appellee has not filed a brief in this matter. App.R. 18(C) provides in pertinent part:

> "If an appellee fails to file the appellee's brief within the time frame provided by this rule, or within the time as extended, the appellee will not be heard at oral argument except by permission of the court upon a showing of good cause submitted in writing prior to argument; and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

{¶4} The parties were divorced in 2009. Appellee was designated residential parent of the minor child in the final agreed judgment entry filed September 15, 2009.

{¶5} On January 26, 2010, Appellee notified the court that she intended to move to South Carolina. Appellant requested a hearing on the issue of Appellee's relocation plans. On June 28, 2010, an agreed entry was filed which allowed Appellee to relocate to South Carolina and remain residential parent of I. H. with

Appellant's parenting time conforming to the court's standard long-distance parenting time schedule, plus an additional eight weeks in the summer at four week intervals. The parties would alternate Thanksgiving and Christmas holiday periods. It also provided that once I. H. was in school, the parties would loosely follow this plan in conformance with her school schedule and the Thanksgiving and Christmas holiday periods would be controlled by the calendar of the school with the Appellant to have each and every spring break in accordance with the school schedule.

{¶6} The entry also provided that the parent starting his or her parenting time would be responsible for all travel time to and from the other parent's home. The entry also provided for no less than three phone calls per week with her between 6:00 and 7:00 p.m. Monday, Wednesday, and Friday.

{¶7} In November 2010, Appellant filed a motion to reallocate the status of residential parent because Appellee had moved to the State of Washington instead of South Carolina, as contemplated by the parties. Mediation was attempted, but was not successful and a hearing was held on the issues on October 24, 2011.

{¶8} After the October 24, 2011 hearing, and while awaiting the decision of the trial court, the parties agreed to a "three month on- three month off" visitation schedule due to the expense of flying between Ohio and Washington. Appellant had I. H. from his Christmas vacation until March 2012. Appellee had her from

March 2012 through June 2012. This arrangement lasted until Christmas vacation of 2012.

{¶9} At Christmas vacation 2012, the parties again agreed to split the visitation equally with Appellant getting the first half of the year from his Christmas vacation visitation until June 20, 2013. This informal agreement was not ratified by the parties, since the agreement at mediation was not signed by Appellee. The parties agreed to the "six months on-six months off" schedule, since they did not know who would be named the residential parent for school purposes.

{¶10} On January 26, 2012, the court issued findings of fact and conclusions of law. The court denied Appellant's motion to reallocate the status of residential parent and the court modified Appellant's parenting time, in part, as follows:

> A. Defendant have parenting time with the child every year at Christmas and spring break;
>
> B. Defendant to have the entire school summer break each year;
>
> C. Each parent would be allowed to visit the child in the other parent's home town with 48 hours' notice. Each parent to have one phone visit each week on Wednesday at 7:00 p.m. with the visit to include video communication over the internet.

The issue of child support was not determined. The January 26, 2012 findings of fact and conclusions of law was couched in terms of specific orders, it was not titled a judgment entry of the findings of fact and conclusions of law.

{¶11} On May 1, 2012, Appellant filed a motion in contempt alleging Appellee had denied Appellant phone contact as required pursuant to court order and that Appellee took the tax exemption for the year 2011, which was to be Appellant's exemption year. On June 12, 2012, the issue was referred to mediation. Although the parties had reached agreement at mediation, Appellee refused to sign the document and the court refused to accept it as an agreed entry.

{¶12} On March 25, 2013, Appellant filed a motion to reallocate the status of residential parent. The court heard the evidence on a motion for contempt on May 1, 2012 and the motion of reallocation of parental rights was heard on June 19, 2013.

{¶13} To summarize, at the June 19, 2013 hearing, Appellee testified she is remarried. Her husband is an unemployed student, age 35, working on his bachelor's degree. The couple lived in a two-bedroom apartment. Appellee was pregnant. She was employed by a janitorial service and earned $11.00 an hour.

{¶14} Appellant testified he resides in Parma, Ohio, works as a chemical engineer, and earns $74,000.00. He is remarried and his new spouse is pregnant. Appellant introduced pictures of his leased, 4-bedroom home and noted I. H. had her own bedroom. The home was less than one mile from the school I. H. would attend. The school system was rated "Excellent" and would have the most opportunities for I. H.

{¶15} Appellant also testified Appellee met her new spouse on the internet and moved to the State of Washington, where there are no other close family members on Appellee's side of the family. Appellant knows nothing about the new step-family. He testified Appellee's new husband told him in an email he'd like to "kick his ass," and has screamed at him over the phone. Appellant testified he does not like the idea of his child in a school he knows nothing about, in Washington, over 3,000 miles away.

{¶16} A decision was entered on both motions on June 27, 2013. In that decision the court did not find Appellee in contempt and did not change the residential parenting status from Appellee.

{¶17} Appellant has filed a timely appeal.

{¶18} Where relevant, additional facts will be set forth below.

## ASSIGNMENT OF ERROR ONE

I. "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND APPELLEE IN CONTEMPT WHEN SHE ADMITTED TO DENYING PHONE VISITATION WITH THE MINOR CHILD HEREIN FOR THREE MONTHS."

## STANDARD OF REVIEW

{¶19} "This court reviews a finding of civil contempt under the abuse of discretion standard." *Clyburn v. Gregg,* 4th Dist. Ross No. 11CA3211, 2011-Ohio-5239, ¶52, quoting *Lindsey v. Lindsey*, 4th Dist. Scioto No. 06CA3113, 2007-Ohio-3803, at ¶18. See, also, *State ex rel. Celebrezze v. Gibbs,* 60 Ohio St.3d 69,

75, 573 N.E.2d 62 (1991); *State ex rel. Ventrone v. Birkel,* 65 Ohio St.2d 10, 11,

417 N.E.2d 1249 (1981); *McCleese v. Clemons,* 4th Dist. Scioto No. 05CA3016,

2006-Ohio-3011, at ¶15.

## LEGAL ANALYSIS

**{¶20}** Contempt may be classified as either civil or criminal depending on

the court's underlying rationale and the penalty imposed. *Clyburn v. Gregg, supra,*

at ¶50; *Denovchek v. Bd. of Trumbull Cty. Commrs.,*36 Ohio St.3d 14, 16, 520

N.E.2d 1362 (1988). Civil contempt orders seek to coerce compliance with the

court's orders while criminal orders punish the party who offends the court. See,

*id.*; *Brown v. Executive 200, Inc.,* 64 Ohio St.2d 250, 253-254, 416 N.E.2d 610

(1980). "A finding of civil contempt does not require proof of purposeful, willing,

or intentional violation of a trial court's prior order." *Clyburn, supra,* quoting

*Townsend v. Townsend,* 4th Dist. Lawrence No. 08CA9, 2008-Ohio-6701, at ¶27,

citing *Pugh v. Pugh,* 15 Ohio St.3d 136, 140, 472 N.E.2d 1085 (1984). "[U]nlike

civil contempt, criminal contempt requires proof of a purposeful, willing, or

intentional violation of a trial court's order." *Clyburn, supra,* quoting *Delawder v.*

*Dodson,* 4th Dist. Lawrence No. 02CA27, 2003-Ohio-2092, at ¶10, citing *Carroll*

*v. Detty,* 113 Ohio App.3d 708, 711, 681 N.E.2d 1383 (1996). In addition, the

burdens of proof differ for the two types of contempt. For civil contempt, a trial

court needs to find that an alleged contemnor has violated a court order by clear

and convincing evidence, but the trial court needs to be convinced beyond a reasonable doubt to convict a contemnor of criminal contempt. *Clyburn, supra*; *Delawder* at ¶10.

{¶21} In the case sub judice, the January 26, 2012 findings of fact and conclusions of law permitted Appellant to speak with his child on Wednesday evenings at 7:00 p.m. every week. The motion for contempt filed on May 1, 2012, alleged that Appellee had refused Appellant telephone contact with his daughter for over five weeks in a row. Appellant points to Appellee's admission, at the hearing of the contempt matter on June 19, 2012, that she denied Appellant phone visitation from March 2012 through June 21, 2012. Appellant argues since this fact was not disputed, this lack of phone visitation violated the court's findings of fact and conclusions of law entered January 26, 2012, and provided clear and convincing evidence to support a finding of contempt.

{¶22} The purpose of a civil contempt motion is to compel compliance with a court's order. *Alessio v. Alessio,* 10th Dist. Franklin No. 05AP-988, 2006-Ohio-2447, ¶37; *Natl. Equity Title Agency, Inc. v. Rivera,* 147 Ohio App.3d 246, 2001-Ohio-7095, 770 N.E.2d 76, at ¶13. It is not to punish the disobedience. *Id.*, *Tomasik v. Tomaksik,* 9th Dist. Summit No. 17822, 1997 WL 45055, *2. Thus, when compliance with a court's order has become moot, the contempt proceeding is also moot. *Alessio, supra*; *Rivera, supra*; *State ex rel. Corn v. Russo,* 90 Ohio

St.3d 55, 555, 740 N.E.2d 265, (2001). In *Alessio,* Mrs. Alessio sought to hold Mr.

Alessio in contempt for a violation of an agreed interim order concerning his

parenting time. Given the temporary nature of the order, the magistrate terminated

it when Mr. Alessio was named the sole residential parent and legal custodian.

Mrs. Alessio did not appeal the termination of the interim order. The appellate

court held because the purpose of a contempt action is to compel compliance with

a court order, and because the interim order was no longer effective, compliance

with the order had become moot. Therefore, Mrs. Alessio's contempt motion was

also found to be moot. *Id.,* at 38.

{¶23} In *Rivera,* cited above, the court noted "[W]hen compliance with the

court's order has become moot, as when the case has been settled, civil contempt

sanctions are no longer appropriate." *Id.,* at ¶13. In *Rivera,* a former employer

sought to hold a former employee, competitor, and its officers, shareholders, and

attorneys in contempt for violating orders not to violate the former employee's

covenant not to compete. The common pleas court held some parties in civil

contempt, but refused to impose criminal contempt. The court of appeals held, in

part, that civil contempt sanctions became inappropriate after competitor ceased

operations and former employee became employed in a different industry. The

appellate court stated: "Under these circumstances, where the appellants were no

longer capable of further violation of the court's injunction, civil contempt sanctions served no further purpose and were inappropriate." *Id.,* at ¶13.

{¶24} In *Huffer v. Huffer,* 10th Dist. Franklin No. 09-AP574, 2010-Ohio-1223, at ¶17, the appellate court observed: "It is well-established that the settlement of a case that gave rise to a civil contempt sanction renders the contempt proceeding moot because the case has come to an end." *Corn,* 740 N.E.2d 265, quoting *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 451-52, 31 S. Ct. 492 (1911). In *Huffer,* the parties settled their divorce action by executing an agreed entry, thus rendering moot the question of enforcing a contempt finding. *Id.,* at ¶17.

{¶25} In *Zupan v. Zupan,* 5th Dist. Ashland No. 13-COA-006, 2013-Ohio-2629, the parties were divorced in February 2012. In July 2012, Appellant filed a motion seeking to hold appellee in contempt of court, in addition to another issue, for moving and failing to notify Appellant of her address. The case proceeded to an evidentiary hearing and the magistrate found Appellee was not in contempt and further, Appellant knew where she lived. On appeal, Appellant argued the court erred in adopting the magistrate's decision because Appellee "indisputably" failed to furnish the current address. The appellate court engaged in analysis regarding failure to file a transcript of proceedings, and noted the review of the matter was

whether the trial court abused its discretion.  The appellate court overruled the

assignment of error, holding as follows:

> "The court found that pursuant to the terms of the decree, Local Rule
> 20 was attached for purposes of clarifying a parenting schedule should
> the parties not be in agreement, not for the purpose of order appellee
> to furnish appellant with an address.  The court further noted appellant
> had appellee's address, and that he had sent her a text message to
> request her address.  We find no abuse of discretion in the court's
> decision that appellee was not in contempt of court."

{¶26}  In this case, the trial court's June 27, 2013 judgment entry referenced

the contempt motion, in pertinent part, as follows:

> "On May 1, 2012, the Defendant filed a Motion in Contempt
> asserting Plaintiff had denied Defendant phone contact as
> required and that Plaintiff took the tax exemption for the year
> 2011 which was to be Defendant's year.
>
> On June 12, 2012, the issue was referred to mediation.
>
> Although an Agreed Journal Entry on Mediation was submitted
> to the Court for approval, the entry noted that the Plaintiff had
> refused to sign it.  Accordingly, the Court refused to accept it as
> an agreed entry.
>
> * * *
>
> Similarly, the Defendant asserts Plaintiff has violated the phone
> provisions of the June 28, 2010 entry.  However, again, as a
> result of the October 24, 2011 hearing, the parenting times for
> the parties was modified in the orders incorporated in the
> January 26, 2010 filing by the Court.
>
> The evidence presented at the hearing appears the parties have
> informally deviated from any existing Court orders regarding
> parenting times.  Although the agreed mediation entry was not

accepted by the Court, it appears they have been complying with the mediated agreement.

* * *

Similarly, the Court finds the Defendant has the burden of presenting clear and convincing evidence to support a finding of contempt against the Plaintiff.  A review of the evidence indicates it is insufficient to meet that standard and Defendant's Motion for a contempt finding filed May 1, 2012, is DENIED."

{¶27}  Considering the evidence presented, the trial court did not abuse its discretion when it determined that Appellee was not in contempt based on her admission.  When Appellant was questioned as to whether there were times when both parties had not called the child due to "certain life aspects," he responded: "Have, have there been a couple of times where I've had issues with travel and stuff like that, like I said, yeah-."[2]  Appellant was questioned as follows:

> Q:      * * * Have we had moments during our time, each of us
> had had times with our daughter that we have had moments
> where the calls have not been consistent; like once a week or
> two (2) weeks or three (3) weeks?  Have we had time periods of
> that?
>
> A:      Yeah, because we call.  We don't have a strict I will call
> this date and this time.  We have an open.  Yeah, so sometimes
> it fluctuates, yeah.
>
> Q:      Okay.

---

[2] Appellant specifically testified he had gone a couple of weeks without seeing his daughter, due to his remarriage, going out of the country for a honeymoon, and Hurricane Sandy's affect in the Parma area when they returned.  He testified while he was out of the country, he did not have cell reception and when he returned home, he didn't have electricity or functional internet for a time period. He also testified there were times where the plant where he worked was on shut-down and he did not know when he would be able to call.

A:      We don't have a set day and time.  So, yeah, I guess so.

{¶28}  Although Appellee made the admission, when questioned about "communication problems" at the hearing, Appellant also admitted "For the last year, we have not had any communication issues."  The above testimony demonstrates that the issue of the three months' withheld has become moot.  The purpose of a civil contempt motion is to compel compliance and Appellant has become compliant.  The court's entry, cited above, also notes the parties appear to have been compliant with the mediated agreement, subsequent to June 12, 2012.  Appellant is now receiving his phone visitation, albeit pursuant to a flexible schedule.  As such, the trial court did not err in failing to find Appellee in contempt.  Due to the parties' compliance to a mediated agreement, as well as Appellee's compliance, the issue of contempt as to the denied phone visitation for the three months roughly between March and June 2012 has become moot.  Appellant's assignment of error is not well-taken and is hereby overruled.

## ASSIGNMENT OF ERROR TWO

II. "THE TRIAL COURT ABUSED ITS DISCRETION
WHEN IT REFUSED TO REALLOCATE PARENTAL
RIGHTS."

## STANDARD OF REVIEW

{¶29}  We apply the same standard to a trial court's decision to award a party legal custody of a child that we apply to all child custody disputes-that is, we

afford the utmost deference to a trial court's child custody decision. See *In re E.W.*,

4th Dist. Nos. 10CA18, 10CA19, 10CA20,  2011-Ohio-2123, ¶18, citing *Miller v.*

*Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).  Consequently, absent an

abuse of discretion, a reviewing court will not reverse a trial court's decision

regarding child custody matters. See, e.g. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550

N.E.2d 178, (1990), syllabus. Thus, when "an award of custody is being supported

by a substantial amount of credible and competent evidence, such an award will

not be reversed as being against the weight of the evidence by a reviewing court."

*Bechtol* at syllabus; see also, *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674

N.E.2d 1159, (1997).

{¶30}  In *Davis*, the court explained the abuse of discretion standard that

applies in custody proceedings:

> "The reason for this standard of review is that the trial judge
> has the best opportunity to view the demeanor, attitude, and
> credibility of each witness, something that does not translate well on
> the written page. As we stated in *Seasons Coal Co. v. Cleveland*,
> (1984),10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273, 1276-1277:

> 'The underlying rationale of giving deference to the findings
> of the trial court rests with the knowledge that the trial judge is best
> able to view the witnesses and observe their demeanor, gestures and
> voice inflections, and use these observations in weighing the
> credibility of the proffered testimony.***

> ***A reviewing court should not reverse a decision simply
> because it holds a different opinion concerning the credibility of the
> witnesses and evidence submitted before the trial court.  A finding of
> an error in law is a legitimate ground for reversal, but a difference of

opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.' This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Id. at 418-419.

{¶31}   Thus, reviewing courts should afford great deference to trial court custody decisions. *Pater v. Pater*, 63 Ohio St.3d 393, 396, 588 N.E.2d 794 (1992).

## A. LEGAL CUSTODY STANDARD

{¶32}   Appellant asserts a change of circumstances between the parties is something the trial court should have considered when determining who should be designated the residential parent for school purposes.  More specifically, Appellant argues the minor child is now integrated into the home with Appellant and the evidence at trial clearly demonstrated Appellant's home's home is a more stable environment.  The evidence further demonstrated the modification of residential parent status was necessary to serve the best interest of the child.  Before we consider Appellant's arguments, a review of the legal custody standard and the statutory factors set forth in R.C. 3109.04(F)(1)is in order.

{¶33}   In determining which of two parents would better meet a child's best interests, a trial court must follow R.C. 3109.04.  Under the "best interests of the child" standard of R.C. 3109.04(E), R.C. 3109.04(F)(1) requires a trial court to consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abuse or neglectful act that is the basis for the adjudication; whether either parent or any member of the household of either parent previously has been convicted or of pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the

household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused or neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶34} In making his arguments, Appellant points out the differences between the home environments the court had to choose between. Appellant points out: (1) the minor child has become integrated into his home; (2) Appellant is remarried and has close contacts with the child's grandparents who live within two-three hours; Appellant is able to be with the child Monday through Friday, based upon a work schedule of 7:30 a.m. to 4:30 p.m. Appellant further points out, by contrast: (1) Appellee's employment takes her from the home from 5:00 p.m. until 2:15 a.m. on school days; (2) Appellee was willfully denied phone visitation for three months; and (3) Appellee's new husband threatened Appellant.

{¶35} Appellant argues there was a change of circumstances from the January 26, 2012 findings of fact and conclusions of law. He argues the parties had entered into an equal time, informal, shared parenting arrangement. Appellant

had remarried and was living in Parma, Ohio, and the couple was expecting a child. Appellant testified he worked from 7:30 a.m. to 4:30 p.m., approximately 20-25 minutes from home, and earned $74,000.00 a year as a chemical engineer. There were relatives of the spouse who lived in the immediate vicinity and Appellant's parents lived 2-3 hours from Parma. Appellant provided pictures of his home and the ranking of the school the child would attend. There was evidence of a close relationship with the child. Appellant's new wife testified she was a stay-at-home mother and would assist in daily care for the I. H. She also has a son approximately 11 months older than I. H. Appellant concluded this evidence demonstrated a close relationship with the child and that her best interests would be served by being in his custody during the school year.

{¶36} By contrast, Appellant argues the testimony presented by Appellee shows that she moved to the State of Washington after meeting her husband on the internet. Appellee's husband is unemployed and working on a degree online, hoping to become a family therapist. Appellant testified Appellee's husband threatened him at the initial meeting.

{¶37} Appellant further argued the testimony showed Appellee works in a janitorial service and earns $11.00 an hour. Due to her work schedule, she would be away from the child during crucial daytime hours. Appellee also admitted she had no contact with close family members since 2011. The closest relative on

Appellee's side of the family lived east of the Mississippi River, approximately

1,500 miles away.

{¶38}  The trial court's June 27, 2013 judgment entry states as follows:

"On March 25, 2013, the Defendant filed a Motion to reallocate the status of residential parent.  A hearing was set for June 5, 2013 but was continued to June 19, 2013.  Defendant's affidavit accompanying the Motion asserts circumstance have changed since the agreed entry of June 29, 2010; among the, the Plaintiff moving to Washington.

However, that issue has been previously litigated in the October 24, 2011 hearing….

* * * Similarly, the Defendant asserted that a change of circumstances existed due to the child entering school in September, 2013.  However, that exact same issue was before the Court in the October 24, 2011 hearing as noted by the last statement of the first paragraph three of the filing "Findings of Fact and Conclusions of Law" which reads:
'The sole issue now before the Court is, what should happen regarding the designation of the residential parent after school commences for the child which is anticipated for September, 2013.'

Based upon the foregoing, the Court finds that the Defendant has failed to present a change of circumstances to warrant the Court to designate him as the residential parent of the child.  Defendant's Motion is DENIED."

{¶39}  We are not convinced that the trial court abused its discretion in

denying Appellant's motion to designate him as the residential parent.  As

referenced in the June 27, 2013 judgment entry, the January 26, 2012 Findings of

Fact and Conclusions of Law, signed by the trial court, indicates some of the same

issues were raised in the October 24, 2011 hearing.  The entry makes note of the same allegations of Appellee's moving too often, creating an unstable environment for the child, and not living in close proximity to her own relatives.  The entry also indicated the evidence demonstrated Appellant had also, in the past, changed residences, failed to provide addresses, and shown erratic behavior.  The points raised in Appellant's brief and at the June 19, 2013 hearing are the same issues which have been previously litigated.

{¶40}  We agree with the trial court that the same issues were raised by Appellant in the October 24, 2011 hearing which was held for the purpose of addressing the issue of residential parent designation for the commencement of September 2013.  Given that the trial court was in the best position to view the witnesses, weigh their credibility, and make an obviously difficult decision, we decline to find that the trial court erred by awarding custody to Appellee.[3]  We again recognize that "child custody decisions involve some of the most difficult and agonizing decisions that trial courts are required to decide, [and that] courts must have wide latitude to consider all of the evidence…." *Seymour v. Hampton,* 4th Dist. Pike No. 11CA821, 2012-Ohio-5053, ¶28, quoting, *In re E.W.*, at ¶19. See, also, *Davis,*77 Ohio St.3d 418; *Bragg v. Hatfield,* 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d,44, ¶24; *Hinton v. Hinton,* 4th Dist. No. 02CA54,

---

[3] Appellant argues Appellee's new husband has exhibited threatening behavior towards him at times.  We do find this troubling.  However, without more evidence on this subject, we defer to the trial court's observations of the witnesses and evaluation of the evidence presented.

2003-Ohio-2785 at ¶9; *Ferris v. Ferris,* 4th Dist. No. 02CA4, 2003-Ohio-1284 at

¶20.  Furthermore,

> "We again emphasize the deference that we must accord trial court decisions involving the custody of children.  Choosing between parents is not an easy task, especially when both are caring and loving parents, as are both appellant and appellee.  Unfortunately, when parents separate courts must choose one parent and the decision may rest upon slight differences of opinion regarding the better overall environment for the child.  Appellate courts are not well-suited to make such decisions based upon a review of a cold record.  Instead, trial courts, where the evidence is heard and witnesses are evaluated, are more aptly suited to make this determination.  Thus, in the instant case we decline to second-guess the trial court's decision.  Also, due to the lack of findings of fact and conclusions of law we do not know exactly how the trial court interpreted the evidence.  Rather, because some evidence exists to support the trial court's decision, we presume that it is correct." *Wilson v. Wilson,* 4th Dist. Lawrence No.09CA1, 2009-Ohio-4978, ¶27, quoting *Crites v. Dingus,* 4th Dist. Athens No. 07CA38, 2008-Ohio-7039, at ¶19.[4]

**{¶41}** Given that the trial court was in the best position to view the

witnesses, weigh their credibility, and make an obviously difficult decision, we

decline to find that the trial court erred by awarding custody to Appellee.

Therefore, Appellant's second assignment of error is also overruled.

**JUDGMENT AFFIRMED**.

---

[4] In *Wilson, supra,* due to an absence of findings of fact and conclusions of law, this court presumed the regularity of the trial court proceedings. Id., at ¶ 19. That discrepancy is obviously not an issue in the case sub judice.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing Meigs County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J:   Concurs in Judgment and Opinion.
Abele, P.J.:   Concurs in Judgment and Opinion as to Assignment of Error I;
               Dissents as to Assignment of Error II.

                              For the Court,

          BY:   _____
                Matthew W. McFarland, Judge

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**