[Cite as *Superior Office Space, L.L.C. v. Carpenter*, 2023-Ohio-967.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| Superior Office Space, LLC, | : | Case Nos. 22CA1 |
| | | 22CA6 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Steven D. Carpenter, et al., | : | |
| Defendants-Appellees. | : | **RELEASED 3/22/2023** |

_____

<u>APPEARANCES</u>:

Rick L. Brunner and Patrick M. Quinn, Brunner Quinn, Columbus, Ohio, for appellant.

John M. Kuhl and Kara M. Mundy, Vorys, Sater, Seymour and Pease LLP, Columbus, Ohio, and Richard A. Williams and Susan S. R. Petro, Williams & Schoenberger Co., LLC, Columbus, Ohio, for appellees.

_____

Hess, J.

{¶1}     Superior Office Space, LLC ("Superior") appeals judgments of the Hocking County Court of Common Pleas in favor of Steven D. Carpenter ("Carpenter") and Steven D. Carpenter, trustee of the Steven D. Carpenter Trust dated April 22, 1997 (the "trust") (collectively the "defendants") in an action primarily focused on the defendants' use of a 1.5064-acre access drive (the "driveway") which Superior contracted to buy from third-parties under a land installment contract.  In Hocking App. No. 22CA1, Superior appeals from (1) an August 20, 2021 judgment entry granting the defendants' motion for partial summary judgment as to the claims against them, and (2) a December 20, 2021 judgment entry setting forth "the maintenance responsibility" for the driveway.  However, neither

entry qualifies as a final appealable order.  Therefore, we dismiss Hocking App. No. 22CA1 for lack of jurisdiction.

{¶2}  In Hocking App. No. 22CA6, Superior appeals from a March 29, 2022 judgment entry finding it and its representative in contempt for violating parking and signage restrictions regarding the driveway which the trial court imposed in the December 20, 2021 judgment entry.  The March 29, 2022 judgment entry is a final appealable order on the issue whether Superior and its representative are in contempt, and in considering that issue, we may review the propriety of the parking and signage restrictions underlying the contempt finding.  Superior contends that the trial court erred when it imposed the restrictions and that we should reverse the restrictions and the finding of civil contempt premised on them.  For the reasons which follow, we conclude that the trial court erred when it imposed the restrictions, reverse the portion of the December 20, 2021 judgment entry imposing them, vacate the March 29, 2022 judgment entry, and remand for further proceedings consistent with this decision.

I.  FACTS AND PROCEDURAL HISTORY

A.  The Pleadings

{¶3}  In April 2017, Superior filed a complaint against Carpenter and the trust, which Superior later amended twice. The second amended complaint contained the following allegations.  Superior is the vendee of a land installment contract for the purchase of 3.5064 acres consisting of a two-acre tract and the 1.5064-acre driveway, which provides the only access to the two-acre tract.  The trust owns two properties, a two-acre tract and a 22.5-acre tract, which are both adjacent to the driveway.  Carl Risch owned all the properties until 1992 when he sold the 3.5064 acres to College Prospects

of America.  At the time, Risch reserved a limited express easement to use the driveway for his personal or agricultural purposes at no charge.  Carpenter and the trust "were given permission to use a portion of" the driveway "as a convenience."  However, they had recently begun to use the driveway for "commercial purposes, hauling dirt and/or gravel with multiple large commercial vehicles" from the trust's 22.5-acre tract, without Superior's permission. This "commercial/business" use of the driveway exceeded the scope of the easement Risch reserved and damaged the driveway.

{¶4}  The second amended complaint alleged claims for (1) trespass; (2) a declaratory judgment that the defendants have no right to use the driveway "through an implied or prescriptive easement;" (3) quiet title – seeking a declaration that the defendants had no right to use the driveway "except as limited by the express easement for personal or agricultural use"; and (4) a declaratory judgment that the defendants' actions constituted "an overburdening of any limited easement rights" they had and an order requiring the defendants "to pay repair costs and/or user fees for the subject driveway to compensate" Superior for their "excess usage." The prayer for relief requested compensatory and punitive damages for trespass, attorney fees, and a declaratory judgment that the defendants' "rights to use the driveway are limited to the terms of the" express easement.

{¶5}  The defendants filed an answer to the second amended complaint and counterclaims[1] for: (1) a declaratory judgment that they have an express easement; (2) a

---

[1] Superior filed a motion for leave to file a second amended complaint and attached the proposed second amended complaint to its motion as an exhibit.  Before the trial court ruled on the motion, the defendants filed their answer to the second amended complaint and counterclaims.  Subsequently, the trial court issued a judgment entry granting the motion for leave and stating that the defendants "have filed an answer to the second [a]mended [c]omplaint and [c]ounterclaim."  It appears the trial court treated the proposed second amended complaint and the defendants' answer to it and counterclaims as being filed instanter.

declaratory judgment that they have a prescriptive easement; (3) a declaratory judgment that they have an implied easement by prior use; (4) a declaratory judgment that they have an implied easement by estoppel; (5) quiet title – seeking a declaration "that title exists to an easement over and across [the driveway] in favor of" the defendants and "against interference" by Superior; (6) trespass – for the wrongful obstruction of and interference with the defendants' use and enjoyment of their easements; (7) nuisance; (8) trespass – for Superior's use of a drainage pipe on trust property; (9) quiet title – seeking an order declaring Superior's use of the drainage pipe unlawful and precluding further use of or interference with it; and (10) temporary restraining order and preliminary and permanent injunction – seeking an order enjoining Superior from interfering with or obstructing the defendants' use and enjoyment of their easements.

{¶6}   The defendants' prayer for relief requested:  (1) declaratory relief "based upon the facts and claims" the defendants had set forth; (2) a temporary restraining order, preliminary injunction, and permanent injunction requiring Superior to allow the defendants "access over and across" the driveway "free from harassment, impediment or interference"; (3) an order declaring that the defendants hold title to an easement over and across the driveway "free and clear of all interference" from Superior; (4) an order declaring that title be quieted to an implied easement over and across the driveway in favor of the defendants; (5) entry of judgment in the defendants' favor on their trespass and nuisance claims; (6) damages for trespass and nuisance plus pre-judgment and post-judgment interest; (7) costs, expenses, and attorney fees; and (8) other relief in equity or at law which the court deemed appropriate.

B. Pre-Trial Proceedings

{¶7}    Superior filed motions for a temporary restraining order and preliminary and permanent injunctions which sought to either limit or prohibit the defendants' use of the driveway. The defendants filed a motion for a temporary restraining order and a preliminary injunction enjoining Superior from interfering with their use of the driveway. In an August 7, 2017 judgment entry, the trial court granted the defendants a preliminary injunction allowing them "access over and across" the driveway "free from harassment, impediment, or interference by plaintiff or [its] employees or agents."  The court noted it "could decide to consolidate the hearings for the preliminary injunction with a trial on the merits and issue a permanent injunction" but believed "that the parties should have the chance to engage in discovery and present additional facts before a permanent injunction is issued."

{¶8}    The defendants later moved for partial summary judgment requesting dismissal of all claims against them except Superior's demand that they "share in the cost to repair/maintain the roadway over which Defendants' easement lies." Superior was evidently not represented during the summary judgment proceedings and did not file a memorandum contra to the motion.  On August 20, 2021, the trial court issued a judgment entry stating the defendants

> moved this Court for Partial Summary Judgment as to all claims against the two defendants, except for plaintiff's demand that the * * * defendants share in the cost to repair and maintain the roadway over the defendants' easement.  Upon review of the motion, this Court finds that there is no genuine issue of material fact as to any claim, except for the [p]laintiff's demand that defendants share in the cost to repair and maintain the roadway over defendants' easement.  This Court also finds that defendants are entitled to judgment on all issues with exception of the above issue, as a matter of law.

This is not a final appealable order. This matter shall be set for a final hearing on the remaining claim. * * *

**{¶9}** Subsequently, the defendants filed a pretrial statement stating the only issues for trial were Superior's demand that they share in the cost to repair and maintain the roadway over the driveway and their counterclaims. The defendants stated that at trial, they would present testimony from Carpenter about their use of the driveway, photographs of other vehicles which use the driveway, and testimony from the operator of a storage facility who uses the driveway. The defendants stated that "[p]ending the presentation of this evidence at [t]rial and the Court's decision with respect to the sharing in the cost of repairing and maintaining the roadway over the Driveway Subject to the Easement, Defendants are prepared to dismiss their counterclaims."

**{¶10}** The trial court scheduled a bench trial for November 8, 2021. On October 8, 2021, Superior's new counsel entered a notice of appearance and moved for a continuance of the trial date. The trial court overruled the motion. The court reasoned that this was "a 2017 case" which "needs to be resolved" and that it had "granted partial summary judgment in favor of the defendants on all issues except plaintiff's demand that defendants share in the cost to repair and maintain the roadway," so the court expected "that the evidence will be limited to this issue and that the trial on this one issue will only take half a day or less."

### C. The Trial

**{¶11}** At the beginning of the trial, the court stated it believed that "the only issue remaining at this point is the sharing of the cost of the repair and maintenance of the roadway over * * * the easement that exists" and that "the only issue at this point is sharing the costs of the roadway." During opening statements, Superior's counsel stated that he

believed the court had made an "accurate statement * * * that we're talking about maintenance at this time." Superior's counsel indicated that defense counsel had sent him a proposed maintenance agreement prior to trial but that Superior had not accepted it. Defense counsel stated that she expected the court would hear testimony from Carpenter that the proposal was "a fair outline of how * * * maintenance should be performed and how it should be reimbursed to [David] Kornmiller," Superior's managing member.

{¶12} When Carpenter testified, defense counsel elicited testimony about the proposal, which included restrictions related to parking and signage. Carpenter testified he believed the restrictions were important "[t]o help protect the property that we have, to not have obstructions." Carpenter testified that Kornmiller had parked vehicles alongside Carpenter's property which advertised Kornmiller's brewery and stated, "Honk if you hate puppy mills." Carpenter testified that he breeds and raises German shepherds, that he believed the purpose of the puppy mill sign was to harass him, and that many people honk at his property. Defense counsel asked, "And so is the inclusion of that parking and signage provision what you believe to be reasonable in order to facilitate the maintenance of the roadway and the shared portion of the road," and Carpenter testified, "I do."

{¶13} Subsequently, Superior's counsel asked Carpenter about "the paragraph [he] wanted about the signage," stating: "That one is kind of an extra subject you wanted to bring up. Is that correct?" Carpenter testified, "I think it's relevant in any maintenance agreement. As far as in this particular situation where you have -- where you have property abutting -- adjoining a road that you use, that there isn't [sic] things parked on that road to obstruct your view of your property, or be able to utilize your property without

having to go down and say could you please try to find somebody?  Could you please move this vehicle?"  He also testified that in the past, vehicles had been parked partially on the driveway and partially on his property.  Superior's counsel responded, "Still, I mean maintenance is one thing and safety is a different thing, right?  And the easement * * * is about maintenance as well as who can come and go on it, but it's not about parking is it?"  Carpenter testified, "I don't know how to answer that besides I believe they are related."  Superior's counsel then stated, "And it's not about the signage, either?  Is that right?"  Counsel then changed the subject.  At the end of the trial, defense counsel moved the trial court to admit the proposed "maintenance agreement."  Superior's counsel objected on the ground that it was a settlement negotiation document.  The court stated it would admit the document "for what it's worth, which is not all that much."

{¶14}  The parties filed written closing arguments.  Superior asserted that the only issue at trial was the amount or percentage the defendants had to contribute to the maintenance and upkeep of the driveway and asked the court to order them to pay 50% of the costs.  The defendants asserted that the "sole issue properly before" the court was what constituted a reasonable amount of road maintenance expense to be borne by the parties using the easement.  The defendants asked the court to "enter an order setting the maintenance responsibilities of the Private Road according to the terms" they had proposed "as a reasonable agreement for the maintenance of" it. They proposed that Superior use a competitive bidding process to hire contractors and that maintenance and repair costs be allocated on a pro-rata basis determined by the number of owners of parcels abutting the driveway at any given time.  They had also proposed terms about the construction of curb cuts, parking, and signage.

{¶15} On December 20, 2021, the trial court issued a judgment entry setting forth its verdict. The court stated that on "August 20, 2021, the Court granted summary judgment to Defendants on all of Plaintiffs' claims." And "[h]aving found an express easement by virtue of the Warranty Deed," the "only remaining issue of fact to be determined" was the defendants' share of the cost to repair and maintain the roadway over the easement. The court also stated that the "sole issue properly before" it at trial was what constituted a reasonable amount of road maintenance expense to be borne by the parties using the easement. The court adopted the defendants' proposed terms, characterizing them as "the maintenance responsibility for the Private Road." Relevant here, the court stated that "[f]or the safety of the property owners abutting the Private Road, no machinery, trailers, vehicles or other property may be stored or parked upon the Private Road except parking of vehicles for limited periods of time (not to exceed four hours). No signage shall be affixed to any machinery, trailer, or vehicle, or erected on any party's property other than signage advertising a business of the party or the business of a third party who is paying to advertise." The entry did not specifically mention the counterclaims, which the defendants had not dismissed. The entry stated that it was "a final appealable order."

## D. Post-Trial Proceedings

{¶16} Superior filed a notice of appeal from the August 20, 2021, and December 20, 2021 judgment entries in Hocking App. No. 22CA1. Subsequently, the defendants filed an emergency motion for an order of contempt asserting that Superior, through its authorized representative, Kornmiller, had violated the parking and signage restrictions. Superior and Kornmiller did not appear at the hearing on the motion, and the court set

the matter for a show cause hearing. Carpenter testified that Kornmiller had a tractor-trailer parked on the driveway in front of Carpenter's property with signs affixed to it advertising the brewery and stating, "Honk if you hate puppy mills."  Kornmiller also had a trailer parked on the driveway with a marquee sign on it. The trailer was near the Carpenter property, and Carpenter had gotten complaints about the sign obstructing the view of traffic for people exiting the driveway.  Carpenter estimated that the tractor-trailer and marquee sign had been on the driveway for eight months.  After Carpenter testified, Superior's counsel told the court, "We're going to stipulate to civil contempt."

{¶17}  On March 29, 2022, the trial court issued a judgment entry finding Superior and Kornmiller in contempt of the December 20, 2021 judgment entry.  The court stated that they could purge the contempt if they (1) removed the marquee sign and trailer upon which it sat from the driveway by 5:00 p.m., (2) removed the tractor trailer, along with the signage affixed to it, from the driveway by 5:00 p.m., (3) removed any parked vehicles from the driveway by 5:00 p.m., and (4) deposited with the court $5,347.22 for the payment of the defendants' legal fees incurred as a result of the contempt within 30 days. The court stated that failure to purge "shall result in a fine of $500 and a term of 30 days in jail for Plaintiff's representative David Kornmiller."

{¶18}  Superior filed a notice of appeal from the March 29, 2022 judgment entry in Hocking App. No. 22CA6.  After Superior filed the same merit brief in both appeals, we sua sponte consolidated the appeals for purposes of oral argument and decision.

## II.  ASSIGNMENTS OF ERROR

{¶19}  Superior presents five assignments of error:

First Assignment of Error: The trial court erred in granting Appellees' motion for summary judgment, where there exist genuine issues of material fact and Appellees did not establish entitlement to judgment as a matter of law.

Second Assignment of Error: The trial court erred in determining that a reasonable allocation of the costs to maintain and repair the easement property was a simple pro-rata division based on the number of property owners.

Third Assignment of Error: The trial court erred in acquiescing to Appellees' *de facto* assignment of their rights under the easement to a separate entity not entitled to use the easement.

Fourth Assignment of Error: Even if otherwise proper, the trial court's decision impermissibly adjudicates issues not properly within the scope of interpreting the easement.

Fifth Assignment of Error: The trial court erred in finding Appellant in civil contempt where the order underlying the contempt is improper and should be reversed.

### III. JURISDICTION

{¶20} Before we address the merits of the appeals, we must decide whether we have jurisdiction to do so. "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." Ohio Constitution, Article IV, Section 3(B)(2). "If a court's order is not final and appealable, we have no jurisdiction to review the matter and must dismiss the appeal." *Clifton v. Johnson*, 4th Dist. Pickaway No. 14CA22, 2015-Ohio-4246, ¶ 8. "In the event that the parties do not raise the jurisdictional issue, we must raise it sua sponte." *Id.*

{¶21} Our review of the record revealed a jurisdictional issue. We instructed the parties to be prepared to discuss at oral argument: (1) whether there is a final appealable order in Hocking App. No. 22CA1, (2) whether there is a final appealable order in Hocking App. No. 22CA6, and (3) if there is a final appealable order in only Hocking App. No.

22CA6, what the proper scope of that appeal is and which assignments of error pertain

to that appeal.  We also ordered the parties to file supplemental briefs on these topics.

### A.  General Requirements for a Final Appealable Order

**{¶22}**  Generally, an order must meet the requirements of R.C. 2505.02 and Civ.R.

54(B), if applicable, to constitute a final appealable order.  *Chef Italiano Corp. v. Kent*

*State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), syllabus.  R.C. 2505.02(B) states:

> An order is a final order that may be reviewed, affirmed, modified, or
> reversed, with or without retrial, when it is one of the following:
>
> (1) An order that affects a substantial right in an action that in effect
> determines the action and prevents a judgment;
>
> (2) An order that affects a substantial right made in a special proceeding or
> upon a summary application in an action after judgment;
>
> (3) An order that vacates or sets aside a judgment or grants a new trial;
>
> (4) An order that grants or denies a provisional remedy and to which both
> of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional
> remedy and prevents a judgment in the action in favor of the appealing party
> with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective
> remedy by an appeal following final judgment as to all proceedings, issues,
> claims, and parties in the action.
>
> (5) An order that determines that an action may or may not be maintained
> as a class action;
>
> (6) An order determining the constitutionality of any changes to the Revised
> Code made by Am. Sub. S.B. 281 of the 124th general assembly * * * or
> any changes made by Sub. S.B. 80 of the 125th general assembly * * *;
>
> (7) An order in an appropriation proceeding that may be appealed pursuant
> to division (B)(3) of section 163.09 of the Revised Code.

**{¶23}**  Civ.R. 54(B) states:

When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

### B. Hocking App. No. 22CA1

**{¶24}** Hocking App. No. 22CA1 is an appeal from (1) the August 20, 2021 judgment entry granting the defendants' motion for partial summary judgment, and (2) the December 20, 2021 judgment entry setting forth "the maintenance responsibility" for the driveway. The parties agree the entries are not final appealable orders because they do not qualify as final orders under R.C. 2505.02, and even if they did, the entries do not comply with Civ.R. 54(B).

**{¶25}** We agree that the entries are not final appealable orders. The entries do not qualify as final orders under R.C. 2505.02(B)(1) or (B)(2) because they do not affect a substantial right. A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). The entries implicate Superior's property rights, which generally "are considered to be substantial rights." *Patel v. Nilvi*, 8th Dist. Cuyahoga No. 88624, 2007-Ohio-3082, ¶ 8. "[H]owever, the mere existence or implication of a substantial right in a case is insufficient to create a final order. Instead, the 'crucial question' is whether the order '*affects* a substantial right.' " (Emphasis sic.) *Crown Servs., Inc. v. Miami Valley Paper Tube Co.*, 162 Ohio St.3d 564, 2020-Ohio-4409,

166 N.E.3d 1115, ¶ 16, quoting *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993).

**{¶26}** "An order affects a substantial right 'only if an immediate appeal is necessary to protect the right effectively.' " *Id.*, quoting *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 7. "For example, in some cases, ' "[t]he proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage" suffered by the appealing party.' " *Mayberry v. Chevalier*, 2018-Ohio-781, 106 N.E.3d 89, ¶ 15 (4th Dist.), quoting *State v. Muncie*, 91 Ohio St.3d 440, 451, 746 N.E.2d 1092 (2001), quoting *Gibson-Myers & Assocs. v. Pearce*, 9th Dist. Summit No. 19358, 1999 WL 980562, *2 (Oct. 27, 1999). "Thus, '[t]o show that an order affects a substantial right, it must be clear that, in the absence of immediate review, the appellant will be denied effective future relief. It is not enough that an order merely restricts or limits that right. Rather, there must be virtually no future opportunity to provide relief from the allegedly prejudicial order.' " (Citations omitted sic.) *Id.*, quoting *In re Estate of Tewksbury*, 4th Dist. Pike No. 05CA741, 2005-Ohio-7107, ¶ 10.

**{¶27}** In this case, the trial court has not issued a final judgment on the merits because there are unresolved counterclaims. The August 20, 2021 and December 20, 2021 judgment entries do not mention the counterclaims. Although the December 20, 2021 entry may have the effect of resolving some of them, like the one for a declaratory judgment that the defendants have an express easement, the entries cannot be construed to resolve all the counterclaims, such as the ones involving the drainage pipe.

**{¶28}** An immediate appeal of the August 20, 2021 and December 20, 2021 judgment entries in Hocking App. No. 22CA1 is not necessary to protect Superior's rights

effectively. As we explain in more detail below, Superior can challenge the propriety of the parking and signage restrictions in the December 20, 2021 judgment entry in Hocking App. No. 22CA6, and we are reversing those restrictions. In addition, it is not clear that, in the absence of immediate review of the trial court's other determinations, Superior will be denied effective future relief. Because the August 20, 2021 and December 20, 2021 judgment entries do not affect a substantial right, they cannot be final orders under R.C. 2505.02(B)(1) and (B)(2) and it is unnecessary for us to resolve whether they meet the other requirements of those provisions.

{¶29} The entries also do not qualify as final orders under R.C. 2505.02(B)(3) through (B)(7). The entries are not orders that vacate or set aside a judgment or grant a new trial. R.C. 2505.02(B)(3). The entries do not grant or a deny a provisional remedy. R.C. 2505.02(B)(4); see R.C. 2505.02(A)(3) (" 'Provisional remedy' means a proceeding ancillary to an action * * *"). The entries are not orders that determine that an action may or may not be maintained as a class action. R.C. 2505.02(B)(5). The entries are not orders determining the constitutionality of certain changes to the Revised Code. R.C. 2505.02(B)(6). The entries are also not orders in an appropriation proceeding. R.C. 2505.02(B)(7).

{¶30} Even if the entries were final under R.C. 2505.02, they do not comply with Civ.R. 54(B). This case involves multiple parties and claims. There are unresolved counterclaims, and neither entry states that "there is no just reason for delay."

{¶31} For the foregoing reasons, the August 20, 2021 and December 20, 2021 judgment entries are not final appealable orders. The fact that the trial court declared the December 20, 2021 judgment entry to be "a final appealable order" is immaterial because

" 'appellate courts are not bound by a trial court's determination or statement that a judgment constitutes a final appealable order.' " *Chilli Assocs. Ltd. Partnership v. Denti Restaurants Inc.*, 4th Dist. Ross No. 21CA3743, 2022-Ohio-848, ¶ 27, quoting *In re Estate of Adkins,* 4th Dist. Lawrence No. 16CA22, 2016-Ohio-5602, ¶ 5. Accordingly, we conclude that we lack jurisdiction to consider Hocking App. No. 22CA1 and dismiss it.

### C. Hocking App. No. 22CA6

**{¶32}** Hocking App. No. 22CA6 is an appeal from the March 29, 2022 judgment entry finding Superior and its representative, Kornmiller, in contempt of the December 20, 2021 judgment entry, setting forth requirements to purge the contempt, and stating that failure to purge shall result in a fine and a jail term for Kornmiller. The parties agree that the March 29, 2022 judgment entry is a final appealable order. The parties agree the fourth and fifth assignments of error pertain to that appeal, but the defendants also assert the second and third assignments of error pertain to that appeal. In addition, Superior suggests that we stay Hocking App. No. 22CA6 "pending final disposition of all of the proceedings below" because the law disfavors piecemeal appeals, and it would "promote judicial economy and efficiency" to "resolve any and all appeals arising out of this case at the same time."

**{¶33}** The Supreme Court of Ohio has held that "a court order finding a party in contempt and imposing a sentence conditioned on the failure to purge is a final, appealable order on the issue whether the party is in contempt of court." *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 23. The court explained that it would be "inherently unfair to force a party found in contempt to either comply with a potentially illegal or improper contempt order or submit

to a sanction in an effort to obtain appellate review of the order the party seeks to challenge." *Id.* at ¶ 22. "Complying can create a hardship for some litigants," and an appeal from a contempt adjudication is rendered moot if the contemnor avoids the sanction by purging the contempt. *Id.* Allowing an immediate appeal prevents " 'the Hobson's choice otherwise presented to the contemnor—compliance with an invalid order, or submission to contempt sanctions without achieving appellate review.' " *Id.*, quoting Thomas J. André Jr., *The Final Judgment Rule and Party Appeals of Civil Contempt Orders: Time for a Change*, 55 N.Y.U.L.Rev. 1041, 1054 (1980).

**{¶34}** Because the March 29, 2022 judgment entry found Superior and its representative in contempt and imposed a sentence conditioned on the failure to purge, it is a final appealable order on the issue whether they are in contempt pursuant to *Docks Venture, L.L.C.* Therefore, we have jurisdiction to consider the appeal in Hocking App. No. 22CA6 with respect to that issue. In doing so, we may review the propriety of the December 20, 2021 judgment entry because it is the underlying basis for the contempt adjudication. *See Smith v. Chester Twp. Bd. of Trustees*, 60 Ohio St.2d 13, 396 N.E.2d 743 (1979), paragraph one of the syllabus (where non-appealable interlocutory order results in a judgment of contempt which is a final appealable order, an appeal from that judgment "presents to the appellate court for review the propriety of the interlocutory order which is the underlying basis for the contempt adjudication"). And even though the Supreme Court of Ohio generally disfavors piecemeal appeals, *State v. Craig*, 159 Ohio St.3d 398, 2020-Ohio-455, 151 N.E.3d 574, ¶ 21, the court has specifically authorized them in the circumstance presented in Hocking App. No. 22CA6. Therefore, we see no

reason to stay the proceedings in that appeal until there is a final disposition of the case in the trial court.

{¶35} The question then becomes which assignments of error pertain to Hocking App. No. 22CA6. The first assignment of error challenges the propriety of the August 20, 2021 judgment entry. The second assignment challenges the propriety of the December 20, 2021 judgment entry but only with respect to the allocation of maintenance and repair costs, which has no connection to the finding of contempt. The third assignment of error challenges the propriety of the August 20, 2021 judgment entry and of the December 20, 2021 judgment entry with respect to the cost allocation, which again, has no connection to the finding of contempt. The fourth assignment of error challenges the propriety of the December 20, 2021 judgment entry with respect to the provisions on curb cuts and competitive bidding and the parking and signage restrictions. The provisions on curb cuts and competitive bidding have no connection to the finding of contempt, but the parking and signage restrictions do because violations of those restrictions resulted in the finding of contempt. The fifth assignment of error challenges the finding of contempt.

{¶36} The only assignments of error which pertain to Hocking App. No. 22CA6 are the part of the fourth assignment of error challenging the parking and signage restrictions and the fifth assignment of error. The first, second, and third assignments of error and the part of the fourth assignment of error challenging the provisions on curb cuts and competitive bidding pertain only to Hocking App. No. 22CA1, and as explained above, we lack jurisdiction in that case. Therefore, we will only address the merits of the part of the fourth assignment of error challenging the parking and signage restrictions and the fifth assignment of error.

## IV.  PARKING AND SIGNAGE RESTRICTIONS

### A.  Positions of the Parties

{¶37} In the fourth assignment of error, Superior contends that the trial court "impermissibly adjudicate[d] issues not properly within the scope of interpreting the easement."  Superior claims the court violated its due process rights when it imposed the parking and signage restrictions because the court ruled "on issues outside the scope of what all were on notice was to be at issue," depriving Superior "of the sort of fair notice to which it was entitled."  Superior asserts that the court and parties agreed the only issue to be considered at trial was the allocation of repair and maintenance costs and asserts that the parking and signage restrictions have "nothing to do with" that subject.

{¶38} Superior also claims the court exceeded its authority when it imposed the restrictions.  Superior asserts that the restrictions were not requested in a pleading or motion, are not justified under the express language of the easement, and are not justified under the court's declaratory judgment or equity jurisdiction.  According to Superior, the only restriction on the use of its property which exists by virtue of the easement is that Superior must "avoid interference" with the defendants' right to use the driveway for ingress and egress.  Superior maintains that the parking and signage restrictions cannot be justified as necessary to avoid interference with that right.  Superior asserts that the court did not find that parked vehicles impeded the defendants' use of the driveway and asserts that putting a sign on the side of the driveway which does not advertise a business does not interfere with use of the driveway.  In addition, Superior claims that the signage restriction "fails a host of protections under the First Amendment and the free-speech

guarantee of Article I, Section 11 of the Ohio Constitution" as it is "grossly overbroad" and is "plainly an unconstitutional prior restraint on speech."

{¶39} The defendants contend that the trial court "did not err in specifying terms related to the use, maintenance and repair of the driveway subject to easement." The defendants maintain that the parties invoked the trial court's equitable jurisdiction by seeking declaratory and injunctive relief and that once a party invokes this jurisdiction, the court has discretionary authority to weigh the parties' competing interests and exact an equitable division of their property rights. The defendants assert that in the August 7, 2017 judgment entry granting the defendants a preliminary injunction, the trial court "clearly reserved its jurisdiction to grant permanent equitable relief." And they assert that the court exercised that jurisdiction in the December 20, 2021 judgment entry by "ordering the division of maintenance/repair costs and addressing other terms of ongoing easement use consistent with terms Mr. Carpenter testified to at trial." The defendants maintain that the facts adduced at trial support the parking and signage restrictions and that the court did not err or exceed its authority when it issued the December 20, 2021 entry.

{¶40} The defendants claim Superior's due process argument fails "even the most cursory review" because (1) "Superior itself invoked the trial court's equitable jurisdiction by seeking to enjoin" their "use of the easement and to declare the non-existence of their easement rights," (2) Superior's counsel received a copy of the defense's "proposed terms" several days before trial, (3) Carpenter testified about them without objection, (4) the "document was entered into the record," (5) Superior's counsel "had and exercised the right to cross-examine Mr. Carpenter" about that exhibit and his testimony related to it, (6) Superior "had and exercised the right to present its own evidence on the appropriate

terms for ongoing use, maintenance, and repair issues," and (7) Superior could have made arguments against the defense's proposal or crafted a "different proposal of its own, based on the evidence adduced at trial" in its written closing argument but failed to do so.

### B.  Analysis

**{¶41}** The Due Process Clause in the Fourteenth Amendment to the United States Constitution states: "No State shall * * * deprive any person of life, liberty, or property, without due process of law * * *."  The Due Course of Law Clause in Article I, Section 16 of the Ohio Constitution provides:  "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."  "The two clauses provide equivalent due process protections."  *State v. Wheatley*, 2018-Ohio-464, 94 N.E.3d 578, ¶ 28 (4th Dist.), citing *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 15.  "The question of whether due process requirements have been satisfied presents a legal question we review de novo."  *Flynn v. State Med. Bd. of Ohio*, 2016-Ohio-5903, 62 N.E.3d 212, ¶ 46 (10th Dist.).

**{¶42}** "The Due Process Clause applies when government action deprives a person of * * * property."  *Greenholz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.E.2d 668 (1979).  "Property is more than the mere thing which a person owns.  It is elementary that it includes the right to acquire, use, and dispose of it.  The Constitution protects these essential attributes of property.  Property consists of the free use, enjoyment, and disposal of a person's acquisitions without control or diminution save by the law of the land."  (Citation omitted.)  *Buchanan v. Warley*, 245

U.S. 60, 74, 38 S.Ct. 16, 62 L.Ed. 149 (1917). The parking and restrictions the trial court imposed deprive Superior of property rights as they limit its right to use the driveway.

{¶43} "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* However, "[i]t is well settled that procedural due process mandates notice and an opportunity to be heard before judgment can be entered against a party." *U.S. Bank v. Smith*, 2020-Ohio-3328, 155 N.E.3d 70, ¶ 9 (11th Dist.). *See also Bennett v. Ohio Dept. of Edn.*, 4th Dist. Scioto No. 21CA3948, 2022-Ohio-1747, ¶ 39 ("Notice and an opportunity to be heard is a fundamental requirement of due process"). "It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

{¶44} The trial court violated Superior's due process rights when it imposed the parking and signage restrictions. It is true that Superior had the opportunity to present evidence and question Carpenter at trial and the right to file a written closing argument. However, prior to trial, in the August 20, 2021 judgment entry, the court stated that the matter would be "set for a final hearing on the remaining claim," which the court indicated was Superior's demand that the "defendants share in the cost to repair and maintain the roadway over the defendants' easement." And when the court overruled Superior's motion for a continuance of the trial date, the court implied Superior's new counsel would not need much time to prepare because the court expected the evidence to be limited to that singular issue. At the beginning of the trial, the trial court expressed its belief that the

only issue properly before it was the allocation of maintenance and repair costs. And in the December 20, 2021 judgment entry setting forth the verdict, the court reiterated that the "sole issue properly before" it was what constituted a reasonable amount of road maintenance expense to be borne by the parties using the easement. Therefore, before, during, and after trial, the trial court indicated that the only issue for consideration at trial was maintenance and repair costs. The parking and signage restrictions have nothing to do with that subject.

{¶45} By imposing the restrictions, the trial court essentially expanded the scope of the trial without giving Superior notice of its intent to do so and an opportunity to be heard on the propriety of the restrictions. The fact that Superior previously requested declaratory and injunctive relief from the trial court and the fact that Superior's counsel received a copy of the defendants' proposed maintenance agreement before trial is immaterial. Those facts did not give Superior notice that the trial court intended to expand the expressly stated scope of the trial.

{¶46} Contrary to what the defendants suggest, Superior did not implicitly consent to an expansion of the scope of the trial by not objecting when defense counsel elicited testimony from Carpenter about the proposed parking and signage restrictions. It is not evident that defense counsel was trying to expand the scope of the trial with this line of questioning. During opening statements, defense counsel stated that she expected the court would hear testimony from Carpenter that the proposed "maintenance agreement" was "a fair outline of how * * * maintenance should be performed and how it should be reimbursed to Mr. Kornmiller." When defense counsel questioned Carpenter about the proposed restrictions, counsel tried to connect them to the subject of maintenance, asking

him, "And so is the inclusion of that parking and signage provision what you believe to be reasonable in order to facilitate the maintenance of the roadway and the shared portion of the road?"  Carpenter testified, "I do."  Therefore, it appears defense counsel was treating the parking and signage restrictions as falling under the subject of "maintenance" and therefore being within the stated scope of the trial.  Although Superior's counsel did not object to Carpenter's testimony about the proposed restrictions, Superior's counsel tried to highlight the fact that they had nothing to do with maintenance during additional questioning of Carpenter.  Moreover, the fact that the trial court admitted the defense's proposal at the end of trial did not somehow give Superior notice that the court had expanded the scope of the trial, particularly when the court expressed that the exhibit had little value.

{¶47}  Superior did not receive notice of the trial court's intent to expand the scope of the trial and did not have a meaningful opportunity to be heard on the propriety of imposing parking or signage restrictions on the driveway.  Therefore, we sustain the fourth assignment of error to the extent it challenges the parking and signage restrictions and reverse the portion of the December 20, 2021 judgment entry imposing them.  Given this decision, we conclude that it would be premature for us to address whether the trial court would have authority to impose the restrictions if it complies with due process requirements.  On remand, the court might decide to not reimpose the restrictions.

V.  FINDING OF CONTEMPT

A.  Positions of the Parties

{¶48}  In the fifth assignment of error, Superior contends that the trial court erred in finding it in civil contempt.  Superior asserts that because the parking and signage

restrictions are invalid and should be reversed, the finding of contempt should also be reversed.  Superior relies on *Foley v. Foley,* 10th Dist. Franklin Nos. 05AP-242, 05AP-463, 2006-Ohio-946, to support its position.  Superior asserts reversal of the contempt finding "is particularly justified" in this case because the underlying order "is a patent infringement on the First Amendment rights of Superior and Mr. Kornmiller."

**{¶49}**  The defendants contend that the trial court did not err when it found Superior in contempt because the December 20, 2021 judgment entry is proper, and Superior stipulated that it violated the terms of that entry.  The defendants assert even if the trial court erred when it issued the December 20, 2021 judgment entry, the judgment was voidable, not void, because the court had jurisdiction to issue it.  The defendants maintain that until a voidable judgment is reversed, vacated, or set aside, it remains in effect and is enforceable in contempt.  The defendants observe that Superior "did not seek a new trial on, set aside, or even stay of the" December 20, 2021 judgment entry before violating it.  They assert that a party faced with an invalid order must have it modified or vacated— not simply ignore it, and to conclude otherwise would diminish the authority of courts.

## B.  Legal Principles

**{¶50}**  "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001) ("*Russo*"). " ' "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." ' "  *Id.*, quoting *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988), quoting *Windham Bank v. Tomaszczyk* , 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.  "In general, '[p]roceedings in contempt are sui

generis in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these.' " *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 11, quoting *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201-202, 299 N.E.2d 686 (1973).

**{¶51}** "However, most courts distinguish between civil and criminal contempt proceedings." *Russo* at 554. "Because all contempt involves some type of sanction or punishment, the distinction between civil and criminal contempt is usually based on the purpose to be served by the sanction." *Liming* at ¶ 12. "Thus, in determining whether a contempt is civil or criminal, the pertinent test is 'what does the court primarily seek to accomplish by imposing sentence?' " *Russo* at 554-555, quoting *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). "To determine the purpose of the sentencing court, the entire record must be reviewed." *Liming* at ¶ 12.

**{¶52}** "Criminal contempt sanctions are unconditional, punitive in nature, and designed to vindicate the authority of the court." *Docks Venture, L.L.C.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, at ¶ 14. "Civil contempt sanctions involve a conditional penalty." *Id.* at ¶ 15. They are " 'designed for remedial or coercive purposes and are often employed to compel obedience to a court order.' " *Id.* at ¶ 15, quoting *Russo* at 555. "Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." *Russo* at 555.

**{¶53}** "Generally, a trial court possesses broad discretion when it considers a contempt motion." *Jones v. Jones*, 4th Dist. Highland No. 20CA3, 2021-Ohio-1498, ¶ 28. "Consequently, absent an abuse of discretion, an appellate court will ordinarily uphold a

trial court's contempt decision." *Id.* An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion * * *." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

**{¶54}** "Obedience to judicial orders is an important public policy." *Lepore v. Breidenbach*, 1st Dist. Hamilton No. C-140310, 2015-Ohio-2929, ¶ 23. We have stated that " '[a]n order issued by a court with jurisdiction must be obeyed "* * * regardless of whether such power was imprudently or prematurely exercised * * *" and "* * * however erroneous the action of the court may be, until the order is reversed by orderly and proper proceedings." ' " (Citation omitted and ellipses sic.) *Slone v. Slone*, 4th Dist. Pike No. 96CA586, 1998 WL 191840, *2 (Mar. 31, 1998), quoting *State v. Moll*, 6th Dist. Wood No. 91WD010, 1992 WL 2539, *3 (Jan. 10, 1992). And we have stated that, "an erroneous order is no defense to a charge of contempt." *Id.*

**{¶55}** However, "[d]epending on the circumstances of a case, a finding of civil contempt may not survive if the underlying judgment or order is reversed." *Foley*, 10th Dist. Franklin Nos. 05AP-242, 05AP-463, 2006-Ohio-946, at ¶ 35. *See also Slone* at *2, fn. 4 (explaining that this court is "aware that in some contexts authorities hold that a civil contempt cannot survive reversal of the underlying order" but finding "application of this rule to be inappropriate under the facts" of the case). "In civil contempt cases where the underlying order or judgment is reversed, the purpose of the punishment may be frustrated because the punishment can no longer operate as to coerce or encourage the contemnor to obey the prior order of the court." *Foley* at ¶ 35. "In contrast, the purpose of a punishment for criminal contempt would not be frustrated if the underlying order of

judgment of a trial court were reversed because the punishment is intended to vindicate the authority of the trial court and punish the contemnor." *Id.*

### C. *Foley v. Foley*

**{¶56}** In *Foley*, the appellant filed an appeal from a divorce decree. *Foley* at ¶ 10. Subsequently, the appellee moved the trial court to hold the appellant in contempt for failure to pay spousal support arising from the divorce decree. *Id.* The trial court found the appellant in contempt and sentenced him to 30 days in jail, "but suspended the sentence provided that appellant liquidate the arrearage in spousal support with monthly payments, and pay appellee's attorneys' fees." *Id.* The appellant then filed an appeal from the finding of contempt, *id.*, and the appeals were consolidated, *id.* at ¶ 1.

**{¶57}** The appellate court concluded the trial court abused its discretion when it denied the appellant's motion for a trial continuance and therefore reversed the divorce decree and remanded for a new trial. *Id.* at ¶ 27-28, 36. The appellate court then considered the impact of that ruling on the contempt finding. *Id.* at ¶ 36-37. The appellate court emphasized that unless an order is void, it "must be obeyed unless and until it is set aside by orderly and proper proceedings." *Id.* at ¶ 37. However, the appellate court explained that the case involved civil contempt because "the punishment was intended to coerce or encourage appellant to comply with the decree of divorce." *Id.* at ¶ 34. The appellate court further explained that its decision to reverse the divorce decree and remand for a new trial had "the effect of putting the case in a posture where no final judgment has been entered on the claim of either party." *Id.* at ¶ 36. And because the contempt finding "was based on the failure by appellant to comply with the divorce decree with respect to the payment of spousal support, and the amount of spousal support in the

divorce decree was in turn based upon evidence and testimony introduced during the original trial, the purpose of the punishment for the civil contempt can no longer be satisfied because the determinations by the trial court with respect to the amount of spousal support may change upon the further litigation of the case on remand." *Id.* at ¶ 36. Therefore, "under the circumstances" of the case, "because the underlying judgment of the trial court * * * [was] reversed and remanded for a new trial," the appellate court vacated the finding of contempt. *Id.* at ¶ 37.

## D. Analysis

**{¶58}** In this case, Superior has not asserted that the trial court lacked subject-matter jurisdiction or personal jurisdiction, thereby rendering the December 20, 2021 judgment entry void. *State v. Hudson*, 161 Ohio St.3d 166, 2020-Ohio-3849, 161 N.E.3d 608, ¶ 11 ("a void judgment is one entered by a court lacking subject-matter jurisdiction over the case or personal jurisdiction over the parties"). In addition, it is undisputed that Superior and its representative violated the parking and signage restrictions set forth in that entry. Even though the trial court imposed the restrictions in violation of Superior's due process rights, that fact rendered the restrictions voidable, not void, so the restrictions had to be obeyed unless and until they were set aside by orderly and proper proceedings. *Foley*, 10th Dist. Franklin Nos. 05AP-242, 05AP-463, 2006-Ohio-946, at ¶ 37. Nonetheless, we agree with Superior that under the circumstances of this case, the trial court's finding of contempt does not survive our reversal of the parking and signage restrictions.

**{¶59}** This case is similar to *Foley*. Like *Foley*, this case involves civil contempt. The trial court imposed the sanctions of a fine and jail time but gave Superior and its

representative an opportunity to purge the contempt by removing vehicles and signs from the driveway and depositing with the court money for the payment of the defendants' legal fees. This conditional penalty was designed to coerce or encourage compliance with the parking and signage restrictions in the December 20, 2021 judgment entry. Like the appellate court in *Foley*, we have reversed the voidable order underlying the finding of contempt, having concluded the trial court imposed the parking and signage restrictions in violation of Superior's due process rights. Like *Foley*, this case will be in a posture on remand where no final judgment has been entered on the claims of either party. And as in *Foley*, the purpose of the punishment for civil contempt can no longer be satisfied as the trial court's decision to impose the parking and signage restrictions may change upon further litigation of the case. Accordingly, we sustain the fifth assignment of error and vacate the March 29, 2022 judgment entry.

## VI.  CONCLUSION

### A.  Hocking App. No. 22CA1

**{¶60}** We dismiss Hocking App. No. 22CA1 for lack of jurisdiction. Therefore, we do not address the merits of the assignments of error which pertain only to that appeal— the first, second, and third assignments of error, and the fourth assignment of error to the extent it challenges the provisions on curb cuts and competitive bidding in the December 20, 2021 judgment entry.

APPEAL DISMISSED.

### B.  Hocking App. No. 22CA6

**{¶61}** We have jurisdiction to consider the appeal in Hocking App. No. 22CA6 on the issue whether Superior and its representative are in contempt, and in doing so, we

may consider the propriety of the parking and signage restrictions underlying the contempt finding.  Therefore, we have addressed the merits of the assignments of error which pertain to that appeal—the fourth assignment of error to the extent it challenges the parking and signage restrictions in the December 20, 2021 judgment entry, and the fifth assignment of error which challenges the March 29, 2022 judgment entry finding Superior and Kornmiller in contempt for violating those restrictions.  We sustain that part of the fourth assignment of error and sustain the fifth assignment of error.  We reverse the parking and signage restrictions in the December 20, 2021 judgment entry, vacate the March 29, 2022 judgment entry, and remand for further proceedings consistent with this decision.

DECEMBER 20, 2021 JUDGMENT REVERSED IN PART,
MARCH 29, 2022 JUDGMENT VACATED,
AND CAUSE REMANDED.

## JUDGMENT ENTRY

In Hocking App. No. 22CA1 it is ordered that the APPEAL IS DISMISSED and that appellant shall pay the costs. In Hocking App. No. 22CA6 it is ordered that the DECEMBER 20, 2021 JUDGMENT IS REVERSED IN PART, that the MARCH 29, 2022 JUDGMENT IS VACATED, that the CAUSE IS REMANDED, and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
    Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**