[Cite as *435 Elm Invest., L.L.C. v. CBD Invest. Ltd.*, 2025-Ohio-4606.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| 435 ELM INVESTMENT, LLC, | : | APPEAL NOS. | C-230599 |
|  |  |  | C-240596 |
| Plaintiff-Appellee, | : | TRIAL NO. | A-1603148 |
| vs. | : |  |  |
| CBD INVESTMENTS LIMITED, et al., | : |  |  |
|  |  | *JUDGMENT ENTRY* |  |
| Defendants, | : |  |  |
| and | : |  |  |
| RONALD GOLDSCHMIDT, | : |  |  |
| Defendant-Appellant. | : |  |  |

This cause was heard upon the appeals, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the appeals are dismissed.

Further, the court orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 10/3/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *435 Elm Invest., L.L.C. v. CBD Invest. Ltd.*, 2025-Ohio-4606.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| 435 ELM INVESTMENT, LLC, | : | APPEAL NOS. C-230599 |
| | | C-240596 |
| Plaintiff-Appellee, | : | TRIAL NO. A-1603148 |
| vs. | : | |
| CBD INVESTMENTS LIMITED, et al., | : | |
| Defendants, | : | *O P I N I O N* |
| and | : | |
| RONALD GOLDSCHMIDT, | : | |
| Defendant-Appellant. | : | |

Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Appeals Dismissed

Date of Judgment Entry on Appeal: October 3, 2025

*Taft, Stettinius & Hollister LLP, Philip D. Williamson, Sonya Jindal Tork, Russell S. Sayre* and *Nicholas J. Pieczonka*, for Plaintiff-Appellee,

*Statman, Harris, LLC, Alan J. Statman* and *William B. Fecher*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} This case concerns the issuance of a charging order to recover on an unpaid judgment. This is the second time this matter has appeared before this court. The first charging order—issued by the trial court under the now repealed R.C. 1705.19(A)—was reversed by this court in *435 Elm Invest., LLC v. CBD Invest. Ltd. Partnership*, 2020-Ohio-943 (1st Dist.) for—in essence—exceeding the bounds of the statute. Now, the instant appeal arises from the issuance of a new charging order by the trial court under the recently enacted R.C. 1706.342 (effective Apr. 12, 2021).

{¶2} Defendant-appellant Ronald J. Goldschmidt appeals from the new charging order, raising several assignments of error for this court's review. However, for the reasons more fully explained below, we hold that the appeals are moot due to certain intervening bankruptcy orders—issued during the pendency of the appeal— that discharged the debt and avoided "any and all judgment liens" in favor of substituted-plaintiff-appellee 435 Elm Investment, LLC ("435 Elm"). Consequently, we dismiss the appeals.

## I. Background

{¶3} Initiated by a complaint in May 2016, the underlying dispute— concerning money owed on a loan—ultimately culminated in—among other things—a 2018 judgment against Goldschmidt and defendant CBD Investments, Inc.— guarantors of the loan—and in favor of 435 Elm in the amount of $1,553,253.26.

{¶4} Shortly after judgment was entered, 435 Elm moved for a charging order against Goldschmidt's membership interest in several entities under former R.C. 1705.19. The trial court granted the motion for the charging order, but—as mentioned above—the order was ultimately reversed by this court for exceeding the bounds of the statute. *See 435 Elm*, 2020-Ohio-943 (1st Dist.).

3

{¶5} Several years later, 435 Elm filed a motion for Goldschmidt to appear for a judgment-debtor examination. At a subsequent hearing held in front of the magistrate, counsel for the parties presented arguments regarding whether Goldschmidt was medically able to attend the debtor's exam. Counsel for 435 Elm opined that Goldschmidt presented nothing from a medical professional stating that he could not appear for an examination. On the other hand, counsel for Goldschmidt opined that, based on his knowledge, Goldschmidt did not "have the ability to sit for a judgment debtor's exam." Ultimately, the magistrate entered an order on July 24, 2023, requiring Goldschmidt to appear for the judgment-debtor examination on August 24, 2023.

{¶6} Just prior to the scheduled examination, Goldschmidt requested a continuance based on a recent diagnosis. Counsel for the parties appeared before the magistrate on August 24, 2023, and presented arguments as to whether this diagnosis called for a continuance. The magistrate ultimately found that Goldschmidt could appear for the judgment-debtor examination and issued a citation for Goldschmidt to appear on September 7, 2023.

{¶7} Goldschmidt filed a motion to set aside the citation order and to continue the debtor's examination.

{¶8} Nevertheless, on September 7, 2023, counsel for the parties appeared before the magistrate. The transcript suggests that the parties received an email from the trial court to proceed with the hearing in front of the magistrate "accordingly," which they did. Counsel for 435 Elm requested that the magistrate hold Goldschmidt in contempt for not appearing but provide him with an opportunity to purge the contempt by remotely appearing at the debtor's exam the following week and paying 435 Elm's attorney fees. Counsel for Goldschmidt indicated agreement to appear

4

remotely for the debtor's exam but opposed all matters of contempt.

{¶9} The magistrate granted the contempt request, finding that Goldschmidt should have appeared that day since no stay was issued pending his motion to set aside. Because Goldschmidt did not appear, the magistrate said that he was "going to hold [Goldschmidt] in contempt and issue a bench warrant in this matter." However, since there was an agreement for Goldschmidt to appear remotely for the debtor's exam, the magistrate said that Goldschmidt could purge the contempt by participating in the debtor's exam at that time. The magistrate further said, "And, at that point, I will take into consideration any motion for sanctions for attorney fees for the previous three [missed dates]." The magistrate suggested that it would enter a contempt order that day. However, no such order appears in the record.

{¶10} Goldschmidt appeared at the debtor's exam on September 13, 2023. At the exam, he testified to having a 100 percent ownership interest in RSJJ Investments Limited LLC ("RSJJ") and RJG Investments Limited LLC ("RJG") and a 95 percent ownership interest in Elm Street Deli LLC ("Elm Street") and Lunar Lounge LLC ("Lunar Lounge"), with the five percent remaining interest being held by his son, Ryan.

{¶11} After the examination, 435 Elm filed an "emergency motion" for a charging order. After responsive briefing, counsel for the parties again appeared before the magistrate on September 27, 2023. At the hearing, the magistrate said that he was going to grant the request for a charging order. Further, the magistrate said that the prior contempt, related to Goldschmidt not appearing for the judgment-debtor exam, "has been purged at this point." However, the magistrate also stated,

> I'm finding you in contempt. And at a future date, if there is a
> motion for any fees or fines as it relates to that contempt, we'll do that.
> But he's appeared. There's no bench [warrant] or anything like that. It

was actually never – I never actually officially wrote out a bench warrant because I did not want him – I did not want there to be any type of mishap where the sheriffs did go out to try to apprehend him. While there has been disagreement about his mental state, I was just glad that he did appear for the Zoom and we were able to get that resolved.

**{¶12}** The magistrate thereafter entered a charging order under R.C. 1706.342, ordering that 435 Elm had "the right to receive any distribution or distributions to which [Goldschmidt] would otherwise be entitled in respect to his membership interests in" Elm Street, Lunar Lounge, RJG, and RSJJ ("the charged LLCs"). Among other things, the order also stated, "Absent further Order of this Court, the Charged Parties shall not directly or indirectly pay any obligation owed by Mr. Goldschmidt or transfer any cash or other item of value to Mr. Goldschmidt or for his benefit." Further, to determine "with certainty" what interest Goldschmidt held in the charged LLCs, the court made two specific orders: (1) Goldschmidt's counsel "shall file an accounting of the funds held in its Trust Account for the benefit of the Charged Parties or Mr. Goldschmidt within five days of this Order," and (2) Goldschmidt shall provide 435 Elm with "documentation sufficient to confirm Mr. Goldschmidt's actual percentage ownership in the Charged Parties within five days of this Order."

**{¶13}** Shortly after, Goldschmidt filed a motion for relief from the magistrate's order in the trial court and moved—the magistrate and the trial court—to stay enforcement of the documentation requirements of the magistrate's order, pending resolution of the motion for relief from judgment. In the motion for relief, Goldschmidt argued—among other things—that a magistrate's order was not the proper method to issue the charging order (i.e., the magistrate should have issued a decision, rather than an order) and that the three nonmonetary orders (the

6

documentation requirements and the order directing the charged parties not to make any payments) exceeded the relief available to 435 Elm under R.C. 1706.342.

{¶14}   Additionally, in the case numbered C-230555, Goldschmidt sought a writ of prohibition from this court to prevent enforcement of the magistrate's order. Goldschmidt also filed a motion to stay enforcement of the charging order.  However, this court denied the motion for a stay.

{¶15}   Goldschmidt filed a notice of appeal from the magistrate's order in the appeal numbered C-230599.  Thereafter, this court dismissed Goldschmidt's petition for a writ of prohibition in the case numbered C-230555.[1]

{¶16}   Meanwhile, in the trial court, 435 Elm filed a motion for sanctions against Goldschmidt and his counsel under R.C. 2323.51 and Civ.R. 11 for "their frivolous conduct and delay tactics."  The motion sought an award of attorney fees and litigation costs "incurred in connection with the judgment debtor examination," and disqualification of counsel.

{¶17}   435 Elm also filed a motion for contempt for failing to comply with the charging order.  The motion claimed that Goldschmidt and his counsel failed to comply with the order by the five-day deadline and requested that the court "order immediate compliance" with the charging order and "award [435 Elm] its costs and attorneys' fees in connection with their conduct leading up to the Charging Order and their subsequent conduct necessitating this motion."

{¶18}   The trial court ultimately denied Goldschmidt's motion for relief from the magistrate's charging order.  The first entry denying the motion for relief was issued in November 2023.  However, at the time, Goldschmidt had already filed his

---

[1] The Ohio Supreme Court ultimately upheld this dismissal in *State ex rel. Goldschmidt v. Triggs*, 2024-Ohio-3225.

7

notice of appeal from the magistrate's order. Consequently, this court held—in the appeal numbered C-230688, the appeal from the trial court's first denial entry—that the trial court lacked jurisdiction to rule on the motion and thus the entry was void. Therefore, the appeal numbered C-230688 was dismissed. Subsequently, a limited remand was issued in the appeal numbered C-230599—the appeal from the magistrate's order—to permit the trial court to reenter its order denying the motion for relief from the charging order. The trial court reissued its order denying the motion for relief in September 2024 and Goldschmidt appealed that decision in the appeal numbered C-240596. Thereafter, the appeals numbered C-230599 and C-240596 were consolidated and are now before this court.

{¶19} Of note, prior to the remand for the trial court to reissue its denial entry, this case was placed on a bankruptcy stay after Goldschmidt filed a Notice of Filing of Bankruptcy. In a subsequent July 2024 status report, Goldschmidt asserted that any debts owed by him had been discharged by the bankruptcy court and thus "any debt owed by [him] and the debt to [435 Elm] has been discharged." Nevertheless, the status report asserted that the bankruptcy case was still active as Goldschmidt had filed a motion to avoid 435 Elm's judgment lien, which was still pending in the bankruptcy court. Shortly thereafter, this court issued a show cause order for why the bankruptcy stay should or should not be lifted. Goldschmidt responded that the automatic stay was lifted upon the issuance of his discharge. Therefore, this court lifted the stay order and issued the remand order.

{¶20} No party filed any documentation with this court regarding the resolution of the pending motion in the bankruptcy court to avoid 435 Elm's judgment lien. However, a "Notice of Filing of Bankruptcy Court Order Avoiding Liens; Discharge Order" was filed in the trial court during the limited remand.

8

**{¶21}** This notice asserted that "the United States Bankruptcy Court for the Southern District of Ohio in the case captioned In re Ronald J. Goldschmidt, Case No. 24-10041 issued an order avoiding the liens in favor of Plaintiff 435 Elm" and against Goldschmidt. The notice included a copy of the order avoiding the liens, and a copy of the order discharging any debts owed by Goldschmidt (hereinafter collectively referred to as "the bankruptcy orders"). The order of discharge showed that a discharge under 11 U.S.C. 727 was granted to Goldschmidt on June 28, 2024. Further, the order avoiding liens ordered the following,

1.    The Judgment Lien of 435 Elm Investment evidenced by (a) a certificate of judgment recorded with the Hamilton County Clerk of Courts as Case No. EX2300666, (b) the execution of the Hamilton County Sheriff upon Debtor's personal property, and (c) the issuance of a Charging Order by the Hamilton County Court of Common Pleas Court are hereby avoided in full pursuant to 11 U.S.C. §522(f)(1)(A) as to Personal Property and Membership Interests in Elm Street Deli, LLC and Lunar Lounge, LLC as described and identified in Motion; AND

2.    A certified copy of this Order Granting Motion to Avoid Judgment Lien may be filed and recorded with the Hamilton County Common Pleas Court to affect the avoidance and release of any and all judgment liens in favor of 435 Elm Investment; AND

3.    Debtor's Ownership of the Personal Property and Membership Interests described in the Motion is free and clear of any claims or liens by or in favor of 435 Elm Investment.

**{¶22}** Once the limited-remand order was satisfied, the parties filed their merit briefs. In the briefs, both Goldschmidt and 435 Elm acknowledged that

9

Goldschmidt's debt had been discharged. However, neither party directly addressed how the discharge, and/or the avoidance of the liens, affected this court's jurisdiction. Nonetheless, Goldschmidt suggested that the Bankruptcy entry "did not affect" certain portions of the magistrate's order, namely: (1) the requirement that any disbursements by the Charged Parties be Approved by the Court, (2) the obligation to file an accounting, and (3) the requirement to provide 435 Elm with ownership documentation ("the nonmonetary requirements").

{¶23} Noticing uncertainty as to whether the instant appeals were rendered moot by the bankruptcy orders, this court ordered the parties to submit supplemental briefing in support of or in opposition to dismissal of the instant appeals.

{¶24} In his supplemental brief, Goldschmidt acknowledges that, "Pursuant to a motion filed in the Bankruptcy Court, the Charging Order, the Lien imposed by the Charging Order, and Appellee's efforts to execute upon appellant's personal property in an effort to satisfy the judgment were avoided." However, he argues,

> While the bankruptcy proceeding did discharge the debt and avoid the liens granted in the Magistrate's Charging Order, the bankruptcy proceeding did not, and could not, affect the requirements set forth in the Magistrate's Charging Order that an accounting be provided and that Appellant establish his percentage ownership in the Charged Parties.

{¶25} He asserts, "Not only was that relief never requested in the Bankruptcy Proceeding; the Bankruptcy Court lacks jurisdiction to vacate a state court order." Further, he argues that there is a pending motion for contempt in the trial court that is "based on requirements of the Magistrate's Charging Order which exceed what is permitted by Ohio Charging Order statute, R.C. 1706.342." Thus, he first argues that

10

"controversies remain following the discharge and the lien avoidance."

{¶26} Goldschmidt additionally argues that this cause meets an exception to the mootness doctrine for appeals that raise issues of great public interest. He first asserts, "it is of public interest, general or otherwise, for the public and for attorneys to know who is making final decisions which affect their substantive rights," and thus this court should address whether the magistrate acted within his authority when issuing the charging order as a magistrate's order. He further argues that "the public also has an interest in knowing if the statutes enacted by the legislature are going to be interpreted as written or if the judiciary is going to enforce those statutes as a magistrate or judge may deem appropriate," and thus this court should address whether the charging order exceeded the bounds of the statute.

{¶27} In 435 Elm's supplement brief, it acknowledges that "the bankruptcy moots" the provision of the charging order that entitles it to collect any distributions from Goldschmidt's LLCs as "435 Elm can no longer collect the underlying judgment from Mr. Goldschmidt." Nevertheless, 435 Elm argues that other "crucial provisions" remain "entirely unaffected." It claims that the nonmonetary requirements of the magistrate's order are not mooted by the bankruptcy "because they can (and should be) enforced regardless of the avoidance of the judgment against Mr. Goldschmidt." Further, 435 Elm argues that it filed a motion for contempt nine months before the discharge and it is entitled to attorney fees for its "significant efforts to compel Mr. Goldschmidt and his counsel to comply with the non-monetary provision of the Charging Order—including its fees for this appeal."

## II. The Appeal is Moot

{¶28} "The doctrine of mootness is founded upon the 'long and well established [premise] that it is the duty of every judicial tribunal to decide actual

controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect.'" *Harvest Land Co-Op, Inc. v. Hora*, 2022-Ohio-2375, ¶ 11 (2d Dist.), quoting *State v. Muwwakkil*, 2018-Ohio-4443, ¶ 6 (2d Dist.). "Courts have no duty 'to decide purely academic or abstract questions.'" *Id.*, quoting *James A. Keller, Inc. v. Flaherty*, 74 Ohio App.3d 788, 791 (10th Dist. 1991). "Thus, a court 'will not decide . . . cases in which there is no longer any actual controversy.'" *Id.*, quoting *Heartland of Urbana, OH L.L.C. v. McHugh Fuller Law Group, P.L.L.C.*, 2016-Ohio-6959, ¶ 36 (2d Dist.).

**{¶29}** R.C. 1706.342—the statute under which the charging order was issued—provides that a charging order "constitutes a lien on the judgment debtor's membership interest." R.C. 1706.342(C). Under the statute, the court "may charge the membership interest of the judgment debtor with payment of the unsatisfied amount of the judgment with interest." R.C. 1706.342(A).

**{¶30}** "'Ordinarily, liens and other secured interests survive bankruptcy.'" *Fifth Third Bank v. Richards*, 2015-Ohio-638, ¶ 31 (11th Dist.), quoting *Farrey v. Sanderfoot*, 500 U.S. 291 (1991). However, under 11 U.S.C. 522(f)(1), "'the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled' if the lien is 'a judicial lien' . . ." *Id.*

**{¶31}** The instant charging order was issued in favor of 435 Elm under R.C. 1706.342, as the holder of the unsatisfied judgment. However, the bankruptcy order avoided "any and all judgment liens in favor of 435 Elm Investment" under 11 U.S.C. 522(f)(1)(a). Further, Goldschmidt's debts were discharged as of June 28, 2024.

### A. The Great Public Interest Exception

**{¶32}** In *Harvest Land*, 2022-Ohio-2375 (2d Dist.), the creditor was granted

a judgment against the debtor for the amount owed on a promissory note. *Id.* at ¶ 2. Following postjudgment proceedings, a question later arose in an appeal from an order denying relief from the judgment under Civ.R. 60(B) as to whether the appeal had been rendered moot by the related bankruptcy proceedings. *Id.* at ¶ 2-10. The parties were ordered to brief the issue, and there was no dispute that the debt and the certified judgment had been discharged in the bankruptcy proceedings. *Id.* at ¶ 7-9, 12-13. Nevertheless, the debtor argued that the case was not moot based on exceptions to the mootness doctrine. *Id.* at ¶ 13. Of relevance here, one of the exceptions addressed by the court was "where the matter appealed is one of great public or general interest." *Id.* at ¶ 16, quoting *State ex rel. White v. Kilbane Koch*, 2002-Ohio-4848, ¶ 16. Although the court recognized such an exception, the court held that the record was devoid of anything to suggest that the exception was applicable. *Id.*

{¶33} Nevertheless, Goldschmidt, in essence, suggests that this case presents matters of great public or general interest as it involves questions about whether the magistrate and/or the trial court exceeded its authority under Civ.R. 53 and the charging statute.

{¶34} "Considering an otherwise moot appeal because it presents an issue of great public or general interest should only occur with caution on rare occasions." *T&R Properties, Inc. v. Wimberly*, 2020-Ohio-4279, ¶ 15 (10th Dist.), citing *Rithy Properties Inc. v. Cheeseman*, 2016-Ohio-1602, ¶ 24 (10th Dist.). "Generally, the invocation of this exception remains the province of the highest court in the state, rather than the intermediate appellate courts, whose decisions do not have binding effect over the entire state." *Rithy* at ¶ 24, citing *Althof v. Ohio State Bd. of Psychology*, 2007-Ohio-1010, ¶ (10th Dist.), and *State ex rel. Lancaster School Dist. Support Assn. v. Lancaster City School Dist. Bd. of Edn.*, 2006-Ohio-5520, ¶ 17 (10th

Dist.).

**{¶35}** This exception is generally utilized for questions that implicate a broader interest than just the parties to the case. *See, e.g., Greater Cincinnati Plumbing Contrs' Assn. v. City of Blue Ash*, 106 Ohio App.3d 608, 612 (1st Dist. 1995) (holding that the appeal was not moot under this exception where the "case involve[d] matters of public interest concerning a city's authority in soliciting bids for public improvements"); *Franchise Developers, Inc. v. Cincinnati*, 30 Ohio St.3d 28 (1987) (holding that the appeal was not moot under this exception where the appeal concerned the authority of the city to adopt ordinances creating development districts with certain development guidelines); *Wimberly* at ¶ 15 (holding that the appeal was not moot under this exception where it was argued that the eviction issue raised was an "entrenched" part of the trial court's eviction docket, with "the potential to affect every landlord, tenant, and property management company" in the county); *Ottawa Cty. Bd. of Commrs. v. Seckler*, 122 Ohio App.3d 617, 620 (6th Dist. 1997) (holding that an appeal is not moot under this exception where the issue concerned the county's authority to appropriate private property for public use and "has the potential to affect large numbers of Ohio property owners.").

**{¶36}** Because the questions presented in this appeal only concern whether the magistrate and/or the trial court exceeded its authority *in this case* and Goldschmidt does not argue that this is a reoccurring or common issue in the county— or beyond—that warrants immediate review, we hold that the appeal—as a whole— does not present one of the rare occasions that a matter of great public or general interest warrants review of an otherwise moot appeal. *See generally, e.g., Coshocton Metro. Hous. Auth. v. Dockery*, 2000 Ohio App. LEXIS 3125, *6 (5th Dist. July 5, 2000) (holding that an appeal does not meet this exception where the appeal only

14

raised fact specific claims as to jurisdiction over the case); *In re Sharp*, 1980 Ohio App. LEXIS 11246, *4 (3d Dist. Feb. 7, 1980) (holding that a fact specific appeal does not meet this exception as it raises a particular, not general, interest that would be disposed of based "solely upon the specific facts.").

### B. Whether Any Controversy Remains

**{¶37}** Goldschmidt and 435 Elm argue that the appeal is partially not moot where the nonmonetary provisions of the magistrate's order remain enforceable. In support of this assertion, Goldschmidt argues that this appeal is not like *Harvest Land*, 2022-Ohio-2375 (2d Dist.), as the bankruptcy order left issues unresolved. 435 Elm does not cite any authority in support of this argument.

**{¶38}** The trial court ordered that, "[a]bsent further order of [the trial] court, the Charged Parties shall not directly or indirectly pay any obligation owed by Mr. Goldschmidt or transfer any cash or other item of value to Mr. Goldschmidt or for his benefit." A review of the transcript reveals that the magistrate issued this order due to concern that Goldschmidt was attempting to transfer assets around to avoid his obligations under the underlying judgment. Thus, this order appeared to be an interim order made in an attempt to aid in enforcement of the judgment.

**{¶39}** Further, the court ordered that Goldschmidt must provide documentation confirming his ownership in the charged LLCs and that Goldschmidt's counsel must provide an accounting of all funds held in its trust account for the benefit of the charged LLCs or Goldschmidt. A review of the transcript suggests that the magistrate was ordering this information as part of discovery. *See generally, e.g., HDDA, LLC v. Vasani*, 2025-Ohio-2000, ¶ 6 (10th Dist.) ("Civ.R. 69 permits a judgment creditor to obtain discovery in aid of execution of a judgment.").

**{¶40}** Thus, ultimately, these nonmonetary requirements were interim orders

issued in an effort to enforce the trial court's 2018 judgment against Goldschmidt and in favor of 435 Elm. However, no party seems to dispute that the 2018 judgment is no longer enforceable, either through the charging order or otherwise. Therefore, any attempt by 435 Elm to enforce any requirement from the magistrate's order would be improper as there is no longer a valid judgment to enforce. In fact, the bankruptcy order specifically notes that the order of discharge "means that no one may make any attempt to collect a discharged debt from the debtors personally," and "[c]reditors who violate this order can be required to pay debtors damages and attorney's fees." Further, the order notes that even a creditor with a lien may *not* enforce a claim against the debtor's property where the lien was avoided. Notably, neither party has provided any authority to this court to show that any of the requirements in the magistrate's order would remain enforceable.

{¶41} A discharge under 11 U.S.C. 727 "relieves a debtor of personal liability for all pre-petition debt *and enjoins any action to collect, recover, or offset a discharged obligation*." (Emphasis added.) *Lance Inv. Corp. v. Burkhalter*, 2022-Ohio-2675, ¶ 6 (8th Dist.), citing *McClung v. McClung*, 2004-Ohio-240, ¶ 12 (10th Dist.); *See generally Friedman Fin. Co. v. Shirley*, 168 Ohio St. 273, 274-275 (1958) ("It is so sufficiently settled as not to require citation of authority that, although a discharge in bankruptcy does not extinguish a debt, it does bar a remedy for the recovery of that debt."). This includes ". . . *continuation* of an action . . ." (Emphasis added.) *Id.*, quoting 11 U.S.C. 524(a). Thus, any action taken in furtherance of the action to collect on the discharged judgment would be enjoined by the bankruptcy order.

{¶42} Nevertheless, Goldschmidt further argues—and 435 Elm agrees—that the appeal is not moot as there is a pending contempt motion in the trial court based

on his failure to follow the charging order during the proceedings after its entry.

**{¶43}** In support of his argument, Goldschmidt points to *Superior Office Space v. Carpenter*, 2023-Ohio-967, ¶ 55 (4th Dist.), which states, "'In civil contempt cases where the underlying order or judgment is reversed, the purpose of the punishment may be frustrated because the punishment can no longer operate as to coerce or encourage the contemnor to obey the prior order of the court.'" *Id.*, citing *Foley v. Foley*, 2006-Ohio-946, ¶ 35 (10th Dist.). Thus, he argues that this court must address the appeal because relief from the magistrate's order would mean that neither he nor his counsel could be held in contempt for failing to comply with the magistrate's order.

**{¶44}** However, such a result is already warranted based on the bankruptcy orders as this proposition of law is not limited to reversals. "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order." *Natl. Equity Title Agency v. Rivera*, 2001-Ohio-7095, ¶ 13 (1st Dist.), citing *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555 (2001). "Thus when compliance with the court's order has become moot, as when the case has been settled, civil contempt sanctions are no longer appropriate." *Id.*, citing *Russo* at 555; *accord, e.g., Sheridan v. Hagglund*, 2014-Ohio-4031, ¶ 22 (4th Dist.). In other words, under circumstances where the appellants "are no longer capable of further violations" of the court's order, civil contempt sanctions serve no further purpose and are inappropriate. *Id.*

**{¶45}** Here, civil contempt sanctions for a violation would no longer be appropriate—regardless of this court's resolution of this appeal—due to compliance with the underlying judgment being rendered moot by the bankruptcy orders. *See, e.g., Washington Mut. Bank v. Beatley*, 2020-Ohio-4658, ¶ 22 (10th Dist.) (holding

that the trial court did not err in finding that it lacked jurisdiction to consider a subsequent civil contempt motion where the underlying action was resolved); *Russo* at 555 ("It is well established that where the parties settle the underlying case that gave rise to the civil contempt sanction, the contempt proceeding is moot, since the case has come to an end.").  In other words, since Goldschmidt is "no longer capable of further violations" of the charging order, civil contempt sanctions would be inappropriate. *See Rivera* at ¶ 13.

{¶46}  Notably, "'[a] sanction for civil contempt must allow the contemnor the opportunity to purge [himself] of the contempt prior to the imposition of any punishment.'" *Souders v. Souders*, 2016-Ohio-3522, ¶ 27 (1st Dist.), citing *Columbus v. Cicero*, 2013-Ohio-3010, ¶ 31 (10th Dist.).  Here, the trial court would be unable to offer Goldschmidt an opportunity to purge as the charging order is no longer enforceable.  Consequently, any argument that Goldschmidt would remain subject to civil contempt sanctions in the absence of relief from this court fails as civil contempt sanctions would no longer be proper.

### III.  Conclusion

{¶47}  Both parties argue that the appeal remains a live controversy.  However, any action in furtherance of the underlying judgment was enjoined by the bankruptcy order and this would include any interim orders entered for the purpose of continuing the action to enforce the judgment.  Therefore, the entire charging order is rendered unenforceable by the bankruptcy order. *See Burkhalter*, 2022-Ohio-2675, at ¶ 6 (8th Dist.).  Beyond that, the interim orders in furtherance of enforcing the underlying judgment would serve no purpose once the underlying debt had been discharged where, as indicated in the charging order, the entire purpose of the order was to effectuate the charging order, which has now been avoided.

**{¶48}** Further, any argument that Goldschmidt remains subject to civil contempt sanctions in the absence of relief from this court fails where civil contempt sanctions are no longer appropriate due to compliance with the underlying judgment being rendered moot.

**{¶49}** For these reasons, we hold that the appeals are moot. Therefore, the appeals are dismissed.

Appeals dismissed.

**BOCK** and **MOORE, JJ.,** concur.